SCHAFFNER *et al.* v. GRUTZMACHER *et al.*

A widow cannot settle the estate of her husband, and make distribution and appropriation, as to her seems right; nor can she, with the assets of the estate, purchase real estate, taking the title to herself, and make the property her own; and by so doing, she becomes an executor *de son tort.*

Where personal property is left with a widow, as the head of a family, and exempt from administration, under section 1329 of the Code, she does not become the absolute owner of the property thus appropriated.

Although a widow, or an heir, is entitled to a definite portion of an estate, and though this may be well determined, yet neither can put his or her hand into the purse of the deceased, and judge and administer for him or herself.

Still less can a widow take that which belongs to herself and others jointly, and which, at her death, would belong to others entirely, and invest it, and call the proceeds exclusively her own.

Where a wife unites with her husband in a conveyance in fee simple of the real estate of the husband, she is not bound by the covenants in the deed, nor is such deed a bar to any title subsequently acquired by her.

Where a sworn answer in chancery sets up matter not responsive to the bill, the new matter is not to be taken as true.

Where a widow assumes to administer upon the estate of her husband, without legal authority, and has made herself an executor *de son tort,*

she cannot take credit for that which, under a legal administration would have been her own.

*Appeal from the Dubuque District Court.*

THURSDAY, JUNE 10.

Bill to declare and enforce a trust. The bill alleges that Andrew Bickel deceased in October, 1854, leaving Eva, his widow, and Mary, Sarah, Matthias, and George, his children, and heirs at law, of whom Mary married Martin Schaffner, one of the complainants, and Sarah married Michael Reilly, another of the complainants; and that Eva, the widow, afterwards married Frederick Grutzmacher, one of the respondents. The complainants are the said Mary, and Martin Schaffner, her husband, Sarah, and Michael Reilly, her husband, and Matthias Bickel, a minor; and they make defendants, the said Eva, with Frederick Grutzmacher, her husband, and George Bickel, a minor, who, they allege, refuses to be a co-plaintiff with them, through some collusion with the other respondents.

The bill alleges that Andrew Bickel, at his decease, was possessed of certain tracts or parcels of land in the county of Dubuque, consisting of an eighty acre tract and two forty acre tracts; that the legal title to the eighty acre parcel was in the said Martin Schaffner, to secure the payment of two hundred and fifty dollars, which said Andrew owed said Martin; and that the legal title to the two forty acre parcels was in said Michael Reilly, to secure the payment of one hundred and fifty dollars, due from Andrew to him. The bill farther alleges, that the said Andrew, at his death, was possessed of a large amount of personal property, consisting of teams, cattle, horses, grain, hay, &c., to the value of six hundred dollars; that he was then in the occupation of the land before mentioned, which is of the value of six thousand dollars; that after the death of said Andrew, the said Eva remained in the possession of the aforesaid land, and continued to reside thereon as she had before done; that soon after the death of her said

husband, she sold and disposed of a large part of the personal property belonging to the estate, and out of the proceeds paid the said Martin about $250, the amount due him; that he, with his wife, the said Mary, on the 9th of November, 1854, conveyed to her the said eighty acre tract of land, intending thereby to convey the same to her for the use and benefit of the estate of said Andrew; that from the proceeds of the sale of the personal property, she also paid the said Michael about one hundred and fifty dollars, the amount due him; and that he, with his wife, the said Sarah, conveyed the said two forty acre tracts of land to the said Eva, on the 6th of November, 1854, intending thereby to convey the same for the use and benefit of the estate of said Andrew; that about the 12th of October, 1855, the said Eva intermarried with the said Frederick, and she now holds out that she has the said lands in her own right, and refuses to recognize the said Mary, Sarah and Matthias, as the heirs to said property, or to allow that they have any right therein, and she pretends that she has right to sell the same, and threatens so to do.

The complainants then aver that, the said Mary, Sarah and Matthias, with said George, have the ownership, and are entitled to the possession of the said lands, in the proportion of one-fourth each, as heirs at law of said Andrew, subject to the right of dower in the said Eva. They represent that a large portion of the land is principally valuable as timber land, and that the defendants are cutting the timber, and committing waste, and pray that they may be enjoined therein. They therefore pray that the said Eva may be decreed to hold said real estate in trust for the use and benefit of those interested in the estate of said Andrew; that the said Mary, Sarah, and Matthias may be decreed and declared to be the heirs of, and to, three-fourths of the said estate of said Andrew, in equal parts, subject to the right of dower in said Eva; and that she, with Frederick, her husband, may be ordered and decreed to make and execute to complainants a good and

sufficient deed of the said three-fourths, subject to the dower right aforesaid, and for such other relief, &c. The deeds of the said Michael and Martin to the said Eva, are set forth, from which it appears that that from said Michael is expressed to be for the consideration of one hundred and fifty dollars, "in hand paid by Eva Bickel," and is a full warranty deed for the two forty acre tracts. The form of the deed is, that "we, Michael Reilly, and Sarah, his wife, do convey," &c.; and at the conclusion, "the said Sarah Reilly hereby relinquishes her right of dower to the premises herein before conveyed." By the other deed, "Martin Schaffner and Mary, his wife," convey the eighty acre tract, for the consideration of two hundred and fifty dollars, in hand paid by Eva Bickel, with full covenants of warranty, and at the conclusion, "the said Mary Schaffner hereby relinquishes her right of dower," &c.

The defendants answer, denying all right in the complainants, as asserted in their bill, and the respondent Eva, claims the said property as in her own right, in fee simple. The defendants, Eva and Frederick, file an amended answer, also, in which they admit the death of said Andrew, as alleged ; that she, Eva, was his widow, and that he left children and heirs at law, as stated in the bill. They admit that Andrew was in possession of said real estate, but aver that he was not seized of the legal title, but that this was vested in the said Michael and Martin, and so remained for a long time thereafter, and until it was conveyed to her, as afterwards stated. They admit that Andrew left some considerable amount of personal property, nearly all of which was household furniture, farming tools and teams, which was by law exempt from distribution, in all amounting to some five hundred and ninety dollars. They say they have no knowledge of said Andrew being indebted to said Martin and Michael, and of the latter holding the title of the real property as security therefor ; but they admit that there may have been some agreement and understanding, that if said Andrew should pay them respectively some certain sum of money, he

Schaffner et al. v. Grutzmacher et al.

should have the lands; and deny any other agreement or understanding in relation thereto.

The respondents further answer, that on the death of Andrew, said Eva was left without any means of support, save what she could obtain by her own labor, with the assistance of her said sons, from the said lands, in the possession of which she remained; that she was applied to, and pressed by said Martin and Michael, to pay to them the several sums of money which they demanded for the aforesaid parcels of land, and offered and agreed, that if she would pay said moneys, they would convey the lands to her free from incumbrances, as her property; that in consequence of these urgent solicitations, in the hope of obtaining the means of support for herself, in order to raise the money required to make the said payments, and being unable to obtain it otherwise than by the sale of the personal property left in her possession, as the widow of her late husband, she made sale of one yoke of oxen, two cows, three heifers, a quantity of hay and straw, two plows, one harrow, some wood, the household furniture, potatoes, corn, oats, and other smaller articles, for the sum of four hundred and thirty-six dollars; besides which she sold one horse, several swine, a cooking stove, and rented the homestead for six months, all for sums amounting to one hundred and sixty-three dollars; by all which she realized the total amount of five hundred and ninety-nine dollars; that out of this she paid for physician's bill, funeral charges, &c., the sum of fifty-one dollars, leaving her five hundred and forty-eight dollars, the whole avails of the personal property of the deceased, all, or nearly all of which, was exempt from distribution, and was hers as owner, and for her support; that from the above sum, she paid said Martin two hundred and fifty dollars, and said Michael one hundred and fifty dollars, in consideration of which they respectively conveyed the said parcels of land to her and her heirs, with full knowledge of all the facts, and with the full intention and design that the same should thereby be and become the

property of said Eva, free from all claim by or in behalf of
the heirs of said Andrew; and that by reason of such
appropriation of the above funds, she was left in great em-
barrassment, and has been obliged to struggle for her
subsistence by her own labor, &c. And she again claims
the lands as her own in fee, as being purchased by the
avails of property which belonged to her in part in fee,
as her portion of the personal estate of said Andrew, and
the remainder of which belonged to her as his widow, for
her support, and that of the family. The defendants deny
the commission of waste, but admit the cutting of some
timber for proper and necessary purposes.

The complainants filed a replication, setting forth
further details of the indebtedness of said Andrew to said
Martin and Michael; showing that the lands were held by
them substantially and equitably in mortgage; averring
that, for the purpose of saving the cost of administration,
it was proposed that said Eva should pay off the said debts,
and take the title for the benefit of the heirs; denying that
she was obliged to struggle for a subsistence; and
alleging that she lived for several months in the family of
said Schaffner, and was at liberty to continue. They deny
that the personal property was exempt from distribution.
They aver that she paid Schaffner $180, and not $250;
and paid Reilly about $50, and not $150; and deny that
it was their intent, by their deeds, to cut off the claims of
the heirs, and vest the property absolutely in her, but aver
the contrary.

The court found that the said Eva held the said real
estate as a trustee, for the use and benefit of the heirs of
the said Andrew Bickel, and decreed that she make and
execute to the said Mary, Sarah, Matthias, and George, a
good and sufficient deed, conveying the same, subject to
the right of dower of the said Eva. From this decree,
the defendants appeal.

*W. T. Barker*, and *Blatchley & Harvey*, for the appel-
lants, made the following points:

I.   This cause having been heard upon the pleadings, without other evidence, the sworn answer of the defendants must be taken as true.   The replication will only be regarded as a common similiter.

II.   The grantors of defendant, Eva, can recover no interest in the land in dispute, based upon title acquired prior to the execution of the deeds to her, until they present a case entitling them to have the deeds reformed or rescinded, on the ground of fraud or mistake, which they have neither shown nor prayed for in the bill.

III.   Admitting that Bickel died seized of the lands in question, then Mrs. Schaffner and Mrs. Reilly, as his heirs, held their interest therein as separate estate from their husbands, and, under our statutes, were authorized to convey them in the same manner as unmarried women, or other persons.

IV.   The defendant, Eva, at least, succeeded to the rights of a mortgagee of the lands, by the payments to, and the conveyance from, Schaffner and Reilly, and cannot be rightfully divested of her mortgage lien, even if plaintiffs' view of the case be sustained.

In support of the above propositions, they cited the following authorities:  2 Kent Com., 167; *Jackson* v. *Vanderheyden*, 17 Johns., 167; *Hill's Lessee* v. *West*, 8 Ohio, 226; *Massie* v. *Sebastian*, 4 Bibb, 436; Rawle on Cov., 429, and note; Code, sec. 1201; 2 Kent, chap. 28; 1 Bouv. Inst., 114; 6 Wend., 12; Code, chap. 84.

*Clark & Bissell*, for the appellees.  [No brief of the attorneys for the appellees came to the hands of the Reporter.]

WOODWARD, J.—The leading points in this case have been settled by that of *Claussen* v. *Le Franz*, 1 Iowa, 228, which was very much like the present one in its main and essential features.  The widow of Burmeister appropriated certain funds of the estate, consisting principally or entire-

ly of money belonging to the deceased, to the completion of certain contracts for the purchase of real property, which were outstanding at the death of her husband, and took the title in her own name. Afterwards she married LeFranz, and claimed the property as her own, as she was entitled by law to a portion of the estate, which portion, she urged, was applied to these payments. It was determined that she held the title thus acquired in trust for the heirs at law, to be treated and disposed of as the law directs.

The widow of a deceased cannot thus settle the estate of her husband—make distribution and appropriation as to her seems right—and take titles to herself, and make the property her own. She becomes an executor *de son tort*. It is true, that she is entitled to a share in personal property, with the children, and this becomes her own absolutely. And a certain description of property is not to be accounted assets for the payment of debts, but remains for the benefit of herself and the family, until disposed of according to law. It has not been decided what rights exist under this provision, nor does the present case call for a close examination of this question, but it seems clear that she does not become the absolute owner of the property thus appropriated. So much was recognized as the law, in the cases of *Wilmington, Adm'r* v. *Sutton, post,* and in *Wilmington, Adm'r,* v. *Goff,* at the present term of this court.

But it is immaterial what may be the rights of the widow in this respect, and a discussion of them is not of place, because whatever they may be, she is not the proper judge. She cannot assume to decide them, and administer the estate. This must be done in the manner, and by the tribunal, directed by the law. The law requires all this property to be inventoried, that the court, representing the law, and all interested, may know what there is, and what is due to each, and make the proper distribution, and hold the proper persons accountable. Any other

mode of proceeding would leave the minor and the absent to the mercy of others.  Although a widow, or an heir, is entitled to a definite portion, and though this may be well determined, yet neither can put his hand into the purse of the deceased, and judge and administer for himself.  Still less, may she take that which belongs to herself and others jointly, and which, at her death, would belong to others entirely, and invest it, and call the proceeds exclusively her own.

The only circumstance in this case, which may possibly cause it to differ in principle from that of *Claussen* v. *LaFranz*, *supra*, or which seems to present any difficulty, is that the two heirs, Mary and Sarah, the wives of the grantors, join in the deeds of their husbands.  Apprehensions have been entertained by members of the legal profession, that trouble might arise from the too frequent practice of joining the wife with the husband in the body of a deed, when the conveyance is of his land, and she intends only to release the right of dower, instead of causing her to appear only in that part technically termed the "*in testimonium.*"  The latter is certainly the safer, and therefore the better practice, especially as it much more truly expresses the real intent.  The former mode—her joining in the body—has led to serious questions : such as whether she is bound by the covenants, and whether she is barred of a subsequently acquired title.  Courts have held that she is not bound by the covenants, and perhaps, also, that she is not barred of an after acquired title.  But how do they come at such conclusion ?  The form of the deed is such as, in the case of other persons, carries all the grantor's right, and bars the future.  They must either look upon the release of dower in the conclusion of the deed, as sufficient evidence of the intent, or else they look beyond the deed, to inquire whether the land conveyed belonged to the husband or the wife, and in the former case, treat it as only a release of dower.  In strictness, neither of these courses is consistent with the rules of law, but

courts have been led to their adoption by the hardness of the case.

Under the practice alluded to, it is not an idle question. How do we know whether a conveyance signed by a *feme covert*, with her husband, is her deed or his; that is, whether he or she is the principal grantor in it, and whether she is to be held bound. The answer to this must be found in one of the methods above referred to. This question, and the answer to it, have a bearing upon the deeds of conveyance in the present case. Here we are aided, however, more than is the case sometimes. There is the relinquishment of dower, which is wholly superfluous, if the wife is making a conveyance of a substantial interest. But, besides this, the deeds are presented accompanied by much explanatory matter, which shows that it was the husband's interest and title which was purchased, and that the consideration was the original one existing between him and the deceased, and no new one moving the wife. So that, if courts have heretofore been correct in the manner of arriving at the conclusion, that a given deed was that of the husband, and that the wife intended only to release her possibility of dower, much more are we justified in declaring, in the present instance, that the deeds were those of the husbands, and that the wives relinquished the dower right only.

But if this manner of viewing the subject is not entirely correct, there is another which, in our opinion, must settle it for this case. Admitting that the deeds are the deeds of the wives, as well as of the husbands, such relations and facts are disclosed respecting them, as take away their binding force in equity: *First*. There is the leading thought, before expressed, that the widow cannot thus assume to settle the estate, and invest its means in realty for her sole use. Her very act of purchasing with those means, though she purchases from the heir himself, situated as these were, was a purchase to their use and benefit. Their ancestor, from whom they inherit, had as yet but an equity, the legal title being in their husbands, and this equitable title was to be changed into the legal. Had they

not released their dower, by executing the deeds, they would, in law at least, have held a third by dower, and then a fourth of the remainder by inheritance, and thus injustice would have been done to the other heirs.

Another consideration worthy of thought, is the absurdity of the transaction, if they are held to have conveyed their whole interest.   The consideration paid was the original one between the husbands and the deceased, and now the money of the wife is paid to the husband to obtain a title for a third person ; or, if you please, their own money is paid them, to obtain their title—they are bought out by their own funds.   They loose their personal property or money, as an independent means, separate from their husbands, and they loose their lands also.   The nature of the transaction is such, as to override the considerations drawn from the form of a deed.   There is something nearly approaching to fraud, and tainting the deeds ; or, at least, the transaction convinces a court of equity, that it was the intention of all to place the legal title in the widow, in trust for those concerned.   It was impossible, therefore, in our opinion, for the widow to gain a title to herself, by paying their own means to the heirs or their husbands, and this supercedes any consideration arising from the deeds ; and, *secondly*, the intent is made manifest through the whole transaction, that the deeds were made to place in the representatives of Andrew Bickel, that title for which he had contracted.

Some points remain to be spoken of.   The respondents claim the benefit of an answer sworn to, and uncontroverted by testimony.   In what has been said, the answer, in effect, receives this force.   There is no necessity for making any question in relation to this, for the opinion proceeds upon the facts there stated : one of which is, that the widow purchases with funds raised from the property of the estate, upon which the cause hinges.   But we cannot give the answer the effect of conclusive evidence, in relation to the intent of the grantors in making the deeds.   This averment of the answer is new matter of the defendants, and not responsive to the petition, and there

may be, besides, an objection arising from the nature of the case. We look to the facts and circumstances, and believe these are sufficient to warrant the conclusion drawn from them.

In connection with this subject of the force of the answer as evidence, we may remark further, that it is immaterial whether the husbands held the title as security for debts owing to them from Andrew Bickel, as complainants allege, or whether he purchased the lands of them, and held their bonds, and they were not to convey until payment was made. It amounts to the same thing, in substance, whether the widow paid off an incumbrance, or paid the purchase money. It was the completion of the contract of her husband, and of the ancestor of these heirs.

It is not correct to suppose, as the respondents urge, that the complainants are asking that their conveyance be set aside and cancelled. To do this, would destroy their own case, or at least would throw inequality and injustice into the cause, and disturb the equity of their case. They need that their deeds be supported—for this is requisite—in order to place the title in such position that all may obtain their proper interest under them. The respondent's counsel have labored to show, that the wives were capable of making the deeds; that the deed of a married woman is valid; and that no farther certificate of acknowledgment is requisite than in other cases. We do not perceive that any difficulty arises in the case, in this respect, and therefore give no time to its consideration.

One thing farther remains. The respondent, Eva, claims that, "admitting that all the property sold belonged to the estate, still a portion of the money paid, was from her own earnings, and another portion from rent of the homestead; and that if she did not become owner of the lands in proportion as she furnished the purchase money, she at least succeeded to the rights of a mortgagee, to the extent of her own money used to remove the incumbrances, and has a right to demand judgment, before she is divested of all title to the lands." We should be inclined to regard this

claim, if the respondent showed, in her answer, any money in fact contributed from own earnings.    But she shows that she realized from the assets of the estate, all that she paid to acquire the title to the land.    Her statement exhibits the following:    She realized the sum of $599, all of which was from the personal property of the deceased, except $42, for the rent of the homestead.    Deducting this, she had $557, from which she paid expenses of last sickness and of the funeral, amounting to $51.    Allowing this to her, it leaves $506.    She paid for the title—to the one, $250, and to the other, $150, being $400 in all, which being taken from the $506, leaves her $106, over and above the payments to secure the title.    In all this, there is no money claimed, as of her earnings, nor is there anything which can be counted as her own, save the rent of the homestead, even admitting that this was her's.

But her position is, that one share of the personalty of the deceased was her own, by the provisions of the law, and that she is entitled to a credit for this.    One answer to this claim might be, that after the payments made for the title, and the expenses for last sickness and funeral, there still remained in her hands, a sum more than equal to her share of one-fifth, making the estimate on the sum total produced by the sale of the personalty.    Another position is, that she should be credited for that portion of the property which would have remained in her possession as the head of the family, for the use of herself and the family.    It has before been intimated, that it is not correct to assume this to be her property, absolutely,

But the answer to both these claims, more pertinent in such a case as the present, is, that when she has assumed to administer the estate, without the law, and has made herself an executor *de son tort*, she cannot take credit for that which, under a regular administration, would have been her own.    A portion would have been hers, individually ; but either she has it, in the surplus of funds above what she has paid for the title, or she has so mingled it with that which belongs to the heirs, in the purchase or

release of the title, that she can have no lien for it upon the real estate, but must rest upon her interest or rights in the realty.

Therefore, the judgment of the district court is affirmed.