## CHILDS v. McCHESNEY.

1. **Practice:** SIGNING RECORD: The provisions of the statute (Rev., 1860, §§ 2664, 2665), providing for the signing of the record of the District Court by the judge thereof are directory merely, and a non-compliance there-. with does not affect the validity of judgments entered in such records.

2. **Conveyance:** IN FEE: COVENANTS. A grantor conveying an estate in fee in real property, or with covenants of warranty, is thereby estopped from setting up against his grantor a title acquired by him subsequently to such conveyance.

3. —— HUSBAND AND WIFE: ESTOPPEL. At common law a married woman is not liable in damages upon covenants in deeds conveying *her own* lands, or upon covenants in which she has united with her husband in the conveyance of *his* lands. Whether under the statute of the State, a *feme covert* would be liable in damages for a breach of covenant in a conveyance of *her own land,* and whether by such a conveyance with covenants of warranty she should be estopped to set up against her grantor an after acquired title, *query ?*

—— The joinder of a wife with her husband in the conveyance of *her* real estate, by a deed containing their covenants of general warranty, does not estop her from subsequently acquiring, with her own means, a title to the same property, and asserting the same against her grantee.

4. **Practice:** OBJECTION TO EVIDENCE. To render an objection to the admission of evidence available on appeal to the Supreme Court, the record should show the ground of such objection.

5. **Presumption:** SHERIFF'S SALE. It is presumed that a sheriff's sale was regularly conducted, and this presumption is not rebutted by the silence of the sheriff's deed as to whether the sale was made under an *alias fi. fa.* or a *venditioni exponas.*

6. **Sheriff's sale:** IRREGULARITY: TIME. *Semble*, that a sale by a sheriff, under an execution, after the expiration of seventy days from the teste thereof, would be an irregularity simply and would not render such sale void.

*Appeal from Louisa District Court.*

WEDNESDAY, JUNE 13.

RECORD: SIGNING OF BY JUDGE: WARRANTY OF MAR-RIED WOMAN'S EFFECT OF: SHERIFF'S SALE. — This action, though in the nature of ejectment, was brought and tried as an equitable suit. Both the parties claim title to the S. E. ¼ of N. W. ¼, 10, 73, 2, Louisa county. Both claim under sheriff's sales, under different judgments, as hereinafter recited. The defendant's title is under the elder judgment and the elder sale. In order to understand the questions which arise, it is necessary to state some additional facts. In March, 1840, the land in question was entered by Thomas Bras. While he so owned it, viz., in *March*, 1857, Bird, Brown & Co. obtained judgment against him. This judgment became a lien, and the first lien upon the land. It is under this judgment that the defendant deduces title in the manner below stated.

In *December*, 1857, Wood & Baker recovered judgment against Thomas Bras, but under this judgment no sale was ever made. Wood & Baker in the latter part of A. D., 1858, issued execution on their judgment, but this was enjoined by Bras, his wife, *Mary* and one *Sarah Carter* becoming his sureties in the injunction bond. This injunction suit remained pending until April, 1861, when Bras failed therein and it was dismissed; and in October, 1861, Wood & Baker recovered a judgment against the obligors

in the injunction bond, viz. : *Thomas Bras, Sarah Carter*, and *Mary Bras*, wife of Thomas, for his damages caused by the wrongful suing out of the injunction. This judgment was set aside as to Mary Bras, on account of coverture, but remained in full force against Thomas Bras and Sarah Carter. Its date as above stated, is October, 1861. In January, 1862, Wood & Baker bought the land in dispute as the property of the said Sarah Carter; under their judgment against her and the said Thomas Bras; they (Wood & Baker) having written notice from the defendant (McChesney) that he claimed the land in dispute as his own. Wood & Baker assigned their sheriff's certificate to the plaintiff in this suit (Childs), and he obtained a sheriff's deed in January, 1863. And this is an outline of the plaintiff's title.

It is now necessary to recur to the history of the defendant's title, and to state certain facts which it is claimed defeat it as against the plaintiff. As above stated, the defendant claims under the Bird, Brown & Co.'s judgment against Bras, the eldest judgment. One Cobb became the assignee of this judgment, and on an execution issued upon it, the land in dispute was sold to him April 16, 1860. On the day redemption expired, viz., April 16, 1861, Cobb (by his attorneys) "assigned his certificate of purchase to *Mary Bras* (wife of Thomas Bras), and authorized the execution of the sheriff's deed to her." She did not redeem the land, but received the above assignment of the sheriff's certificate. It is admitted by the counsel for the plaintiff that the money with which she thus purchased the certificate "was *hers, in her own right*, having been derived from sources independent of her husband." On the 24th of April, 1861, Mary Bras received a sheriff's deed upon her certificate. On the 18th of October, 1861 (which was prior to sheriff's sale under which plaintiff claims), Mary Bras and her husband, Thomas, conveyed the land in question

to the defendant, McChesney. And this is an outline of the defendants' title.

It is now necessary again to go back and state a fact, upon which, in conjunction with the foregoing, the plain-tiff relies to estop the defendant from setting up his title against the plaintiff.

On the 24th day of October, 1859 (which, it will be perceived, was after the Bird, Brown & Co., and the first Wood & Baker judgments against Thomas Bras were rendered, and while both of these judgments were liens, in the order of their rendition upon the land), Thomas Bras and the said *Mary* Bras, his wife, conveyed the land in question to the said *Sarah Carter*, against whom Wood & Baker afterwards, in October, 1861, obtained judgment as above recited. This conveyance by Bras and wife to Carter was, by *general warranty*, thus: "And we (*i. e.*, Thomas and Mary Bras), warrant the title against all persons and all incumbrances." At this time the title was in the husband, subject to the two judgment liens against it. In this conveyance to Sarah Carter, Mrs. Bras united as wife merely. She had no other interest than her dower right.

The District Court decided in favor of the defendant. The plaintiff appeals.

*D. C. Cloud, D. W. Sprague* and *H. Ambler* for the plaintiff.

*J. Tracy* for the defendant.

DILLON, J.—I. The plaintiff claims that the Bird, Brown & Co. judgment, which is the foundation of the defendant's title, is void, because the entry or record thereof was never signed by the judge as prescribed by the statute. Rev., §§ 2664, 2665. The objection is true in point of fact, but unsound in point of law. The judg-

1. PRAC-TICE: signing record.

ment was rendered when Judge Lowe was upon the bench of the District Court at his last term. It not being practicable to have the entries all prepared at the term, the judge could not sign them. The statute provides that they *may* be signed at the next term, but such delay shall not prevent execution issuing and other proceedings taking place as usual. The provision in relation to signing the records is *directory* merely.

II. Defendant acquired title under Mary Bras, who, as the wife of Thomas Bras, had previously united with her 2. CONVEYANCE IN FEE: covenants: estoppel. husband in a conveyance by warranty to Sarah Carter, under whom the plaintiff claims. The plaintiff claims that the defendant is estopped to set up the title which he acquired from Mary Bras. The defendant is in privity of estate with Mary Bras, and the plaintiff with Sarah Carter. It will simplify the question if we inquire whether Mary Bras as against Sarah Carter, acquired by the purchase of the sheriff's certificate and the execution of the sheriff's deed to her, a title which would not inure to the benefit of the said Sarah? It is very plain, both upon general principles (Rawle on Cov., 3. — husband and wife: estoppel. chap. 9), and by the statute (Rev., § 2210), that if the *husband* had acquired a title subsequent to his conveyance with warranty to Sarah Carter, that title would have inured to her benefit. In other words, the husband would have been estopped to set it up, against his prior grantee in fee, or with warranty. His prior deed with warranty would transfer the new title by an *estoppel working a grant.* To what extent a married woman is thus estopped, is a question upon which, in other States, the decisions are by no means accordant. Aside from statute, a married woman is not liable in damages upon covenants in a deed of *her own land*, much less liable when she simply unites in a covenant in a deed of her *husband's* land. So far the authorities all agree. This

non-liability of the wife is based upon her common law incapacity of binding herself by contract. 2 Kent Com., 167, 168. Whether in this State, under the statutory provisions, which, as respects the conveyance of real estate of married women, removes substantially all of the restraints of coverture, a *feme covert* would be liable in damages for a breach of covenant in a conveyance of *her own land*, or whether, by such a conveyance with warranty, she would be estopped to set up against her grantee, an after acquired estate, are questions, highly important, if not difficult, and upon which (as it is not necessary to do so) we express no opinion. See *Morris* v. *Harris*, 9 Gill. (Md.), 19; *Den* v. *Demarest*, 1 Zabr., 541; *Simms* v. *Hervey*, 19 Iowa, 272, and authorities *infra*.

While many authorities hold that a wife who conveys *her own* land with warranty, will be estopped to set up a subsequent title (*Hill's Lessee* v. *West*, 8 Ohio, 222, 227 (1837), materially misquoted in Rawle on Cov. Title (2d ed.), 429, note, using the words conveyance of *"his* land," instead of *"her* land," as in the original; *Nash* v. *Spofford*, 10 Metc., 192 (1845); *Fowler* v. *Shearer*, 7 Mass., 14 (1810); *arguendo* by PARSONS, Ch. J.; *Colcord* v. *Swan*, Id., 21 (1811); *Doane* v. *Wilcut*, 5 Gray, 332 (1855), per SHAW, Ch. J.; but see and compare *Wright* v. *Shaw*, 5 Cush., 56, 66 (1849), where previous cases (except 10 Metc., 192, *supra*), are reviewed, and estoppel of wife doubted; *Den* v. *Demarest*, 1 Zabr., N. J., 525 (1848); *Fletcher* v. *Coleman*, 2 Head. (Tenn.), 384 (1859); *Pentz* v. *Simonson*, 13 N. J., 234; *Morrison* v. *Wilson*, 13 Cal., 494 (1859); *Massie* v. *Sebastian*, 4 Bibb. (Ky.), 436 (1816); 2 Wash. Real Prop., 485, pl. 43; 586, pl. 23), yet few, if any, of them hold that she is thus estopped where she unites in a conveyance of her husband's real estate, though she joins in a covenant. *Jackson* v. *Vanderheyden*, 17 Johns., 167 (1819), directly in point; *Groat* v. *Townsend*, 2 Hill, N. Y., 554 (1842); *Mar-*

*tin* v. *Develly*, 6 Wend., 9 ; *Dominick* v. *Michael*, 4 Sandf. S. C., 424 ; 2 Kent Com., 167 ; *Carpenter* v. *Shermerham*, 2 Barb. Ch., 314 ; *Wadleigh* v. *Gluris*, 6 N. H., 17 (1832); *Lowell* v. *Daniels*, 2 Gray, 161 (1857).

That she is not barred of an after acquired title, by a covenant in a deed intended to convey her husband's land, *u* would seem to have been the opinion of the court in *Schaffner* v. *Grutzmacher*, 6 Iowa, 137, although that case did not alone rest, as it did in part, upon this ground.

So in the circumstances of this case, we see no reason for holding Mary Bras disabled from acquiring for herself with her own means, the sheriff's certificate of sale, and the sheriff's deed which it authorized to be made to her. She bought this with her own money, with money upon which neither her husband or his creditors, or covenantee had any claim. She made the purchase on the last day for the redemption, when her husband, Wood & Baker, the second lien holders, and Sarah Carter the grantee, had all failed to redeem, and when, if Mrs. Bras had not purchased the certificate, the title would have passed to Cobb, and forever away from Wood & Baker and Sarah Carter. They were not injured or affected by her purchase.

They had the same rights after her purchase as they had against Cobb, her assignor.

Wood & Baker were not, as argued by appellant, enjoined from redeeming from Cobb's sale. The covenant of Mrs. Bras in the deed of her husband's land, did not bind her personally, and, in our opinion, it did not have the effect to make the subsequent title, which she acquired in the way stated, inure to Sarah Carter, the former purchaser from her husband.

III. Plaintiff next claims that the sale under the Bird, Brown & Co. judgment, was void, because it was made after the lapse of more than seventy days from the test of the execution. The execution was issued January 7, 1860.

The sale was made April 16, 1860, more than seventy days. The sheriff's deed is silent as to whether *an alias fi. fa.* or a *vendi. exponas* was issued. The record does not show that the plaintiff objected to the introduction of the sheriff's deed *on this ground*, and the statute requires the ground of the objection to appear. Rev., § 3107. This is one answer.

4. PRAC-
TICE:
objection to
evidence.

Again: the presumption is in favor of the regularity of the sheriff's sale. Rev., § 3356. This is not rebutted by the silence of the sheriff's deed upon the point whether there was an *alias writ* or a *vendi. exponas*, and no evidence, *aliunde*, upon the point was offered by the plaintiff.

5. PRE-
SUMPTION:
sheriff's
sale.

Again: the objection, if true in point of fact, would probably be an irregularity simply, not a matter which would render the sale utterly void. *Stein* v. *Chambless & Banford*, 18 Iowa, 474; *Butterfield* v. *Walsh*, 21 Iowa.

6. SHER-
IFF'S SALE:
irregular-
ity: time.

Upon an examination of the whole case we are of opinion that the District Court properly adjudged the cause for the defendant.

The judgment, therefore, stands

Affirmed.