## EDWARDS, Trustee, *v.* DAVENPORT and others.

*(Circuit Court, S. D. Iowa.    May, 1883.)*

1. **MORTGAGE—COVENANTS OF WARRANTY—AFTER-ACQUIRED TITLE—MARRIED WOMAN.**

    A mortgage containing covenants of general warranty will, as between the mortgagor and mortgagee, pass an after-acquired title; but this rule does not apply to covenants in the deed of a married woman, for they amount to nothing more than a release of dower, and do not estop her to claim an after-acquired interest.

2. **DEED—MENTAL CAPACITY.**

    To constitute such unsoundness of mind as should avoid a deed at law, the person executing such deed must be incapable of understanding and acting in the ordinary affairs of life.

3. **SUBROGATION—ADVANCES TO PAY LIEN.**

    A party who advances money to another that is used to discharge a valid pre-existing lien on real estate, if not a mere volunteer, is entitled by subrogation to all the remedies which the original lienholder possessed as against the property.

4. **CONTRACT BY INSANE PARTY—NOTICE.**

    A contract made by an insane person is not merely voidable, but absolutely void; and a contract of surety by such a party will not bind him or his estate, even if the other party to the contract is ignorant of his incapacity and acts in good faith.

5. SAME—VALIDITY OF CONTRACT OF INSANE PARTY.

The decisions of a state supreme court as to the responsibility of a lunatic, or person *non compos mentis,* upon his contracts do not establish a rule relating to land titles within such state which the federal courts should follow, notwithstanding a contrary decision by the United States supreme court.

6. DECISIONS OF STATE COURTS—HOW FAR BINDING ON FEDERAL COURTS.

Where any principle of law establishing a rule of real property has been settled in the state courts, that rule will be applied by the federal courts within the same state; and it makes no difference whether such rule of property grows out of the constitution or statutes of the state, or out of the principles of the common law adapted and applied to such titles.

7. SAME—WHEN A RULE OF PROPERTY.

The decisions of the highest court of a state may be said to constitute a rule of property when they relate to and settle some principle of local law directly applicable to titles.

In Equity.

George L. Davenport and wife and George A. Davenport, their son, executed a mortgage to secure the payment of certain bonds on real estate in the city of Davenport, the debt to be apportioned upon the different pieces mortgaged. Jonathan Edwards, to whom the mortgage had been executed as trustee for the Equitable Trust Company of New London, Connecticut, from whom the money was borrowed, sought to foreclose the mortgage, and defendants claimed that the mortgage was void as to the property of George A. Davenport because he was *non compos mentis* at the time of the execution of the bonds and mortgage. Pending the suit, George A. Davenport died, and a bill of revivor was filed setting up that George L. Davenport and Sarah G. Davenport, the other defendants, were his heirs, and claiming that as they joined in the mortgage their after-acquired title by inheritance from him inured to the benefit of the mortgagees, and that they were estopped from setting up his want of mental capacity.

*Brannon & Jayne* and *J. Carskaddan,* for complainants.

*George E. Hubbell, Bills & Block,* and *Martin, Murphy & Lynch,* for respondents.

McCRARY, J. Upon the death of George A. Davenport, the title to his real estate included in the mortgage passed to his father and mother, George L. Davenport and Sarah G. Davenport, to each an undivided one-half; and as they both joined in the mortgage and in the convenants of general warranty therein, we are to determine, in the first place, how far either or both are estopped to set up the incapacity of George A. to make the contract sued on.

The title acquired by the respondent George L. Davenport through the death of his son, George A. Davenport, undoubtedly inures to the benefit of the mortgagee by virtue of the covenants embraced in the mortgage.

A mortgage containing convenants of general warranty will, as between the mortgagor and mortgagee, pass an after-acquired title. *Rice* v. *Kelso,* 7 N. W. Rep. 3; S. C. 10 N. W. Rep. 335; Jones, Mortg. §§ 561, 682, 825, and numerous cases cited. But at common

law this rule does not apply to covenants contained in the deed of a married woman. They amount to nothing more than a release of dower, and do not estop her to claim an after-acquired interest. Bishop, Mar. Wom. § 603; *Childs* v. *McChesney*, 20 Iowa, 431. And the same rule prevails under the statute of Iowa, which provides (Code, § 1937) as follows:

"In cases where either the husoana or wife join in a conveyance of real property owned by the other, the husband or wife so joining shall not be bound by the convenants of such conveyance, unless it is expressly so stated on the face thereof."

There is upon the face of the mortgage no express statement that the wife shall be bound by the covenants contained therein. *O'Neil* v. *Vanderburg*, 25 Iowa, 104; *Thompson* v. *Merrill*, 10 N. W. Rep. 796.

It follows that, independently of any question as to the mental capacity of George A. Davenport, the complainants are entitled to decree as against all the property embraced in the mortgage and which belonged to George L. Davenport at the time that the mortgage was given, and as to the undivided one-half of that portion which belonged to George A. Davenport.

As to the remaining undivided half of said last-mentioned property, the right of complainant depends upon the determination of the question of the mental capacity of said George A. Davenport at the time that the bonds and mortgage were executed.

It is necessary in the first place to determine what is the test by which the question of the capacity to contract is to be decided. Some of the earlier cases, and a few comparatively recent ones, hold that, in order to set aside a contract upon this ground, it must appear that there was a total deprivation of reason. *Ex parte Barnsley*, 3 Atk. 168; *Stewart's Ex'r* v. *Lispenard*, 26 Wend. 255. The more modern rule is that it is only necessary to show that the party executing the contract was of such weak and feeble mind as to be incapable of comprehending its nature. The rule is sometimes stated in another form, thus:

"To constitute such unsoundness of mind as should avoid a deed at law, the person executing such deed must be incapable of understanding and acting in the ordinary affairs of life."

This statement of the rule is given in the opinion of the house of lords, in *Ball* v. *Manning*, 1 Dowl. & C. 254, and is quoted with apparent approval by the supreme court of the United States in *Dexter* v. *Hall*, 15 Wall. 9. In the former of these cases the court below refused to charge that the unsoundness of mind must amount to idiocy; and this ruling was sustained first by the court of king's bench in Ireland, afterwards by the exchequer chamber, and finally by the house of lords.

The rule is thus stated in *Dennett* v. *Dennett*, 44 N. H. 531:

"The question, then, in all cases where incapacity to contract from defect of mind is alleged, is not whether the person's mind is impaired, nor if he is

affected by any form of insanity, but whether the powers of his mind have been so far affected by his disease as to render him incapable of transacting business like that in question."

And again:

"Every person is to be deemed of unsound mind who has lost his memory and understanding by old age, sickness, or other accident, so as to render him incapable of transacting his business and of managing his property.

"When it appears that a grantor had not strength of mind and reason to understand the nature and consequences of his act in making a deed, it may be avoided on the ground of insanity." *Re Barker*, 2 Johns. Ch. 232.

In *Converse* v. *Converse*, 21 Vt. 168, it is said that a person is of unsound mind if "the mind is inert, the memory is unable to recall and the mind to retain in one view all the facts upon which the judgment is to be formed for so long a time as may be required for their due consideration."

I am constrained to hold that within the rule established by these authorities, George A. Davenport was not at the time of signing the bonds and mortgage in question of sound mind, or capable of making a valid contract. That he was not totally bereft of reason may be admitted; but that he was incapable of understanding the nature and consequences of his act in executing these instruments is, I think, equally clear. The powers of his mind had been so far affected by disease as to render him incapable of transacting business like that in question.

Without attempting a review of the evidence, an abstract of which covers nearly 900 printed pages, it must suffice to say that it shows that he was attacked by a violent disease when about 7 years of age, which produced convulsions and a state of unconsciousness, lasting several weeks, and which caused a suspension of mental development from that time, and obliterated from his memory all that he had learned at school prior thereto. The family physician who attended him testifies that this sickness left him in a state "comparatively idiotic." A few years later he was attacked with epileptic convulsions, which continued to afflict him and to constantly impair and further weaken his intellect until the day of his death, which occurred in 1881, while an inmate of the insane hospital at Mt. Pleasant, Iowa. At the time of the execution of the instruments in question he had suffered with this malady for about 20 years. The effect of epileptic convulsions is always to impair the intellect, and when it is remembered that, after the illness suffered in childhood, George A. Davenport never possessed at his best anything more than the intellect of a child of 7 years, it is apparent that this long process of impairment must have left him in a state of such imbecility as to render him utterly incapable of understanding the nature and consequences of his act in executing the bonds and mortgage sued upon.

It is in such cases, of course, impossible to fix the exact point where the disposing mind disappears, and incapacity to contract be-

gins; but here all the facts and circumstances, and the decided weight of the direct testimony, show that in the case of George A. Davenport this point had been reached and passed prior to the date of the instruments sued on. His conduct for years prior to the execution of said instruments—in fact, during all the period after his illness in childhood—was that of a mere child, or of a thoroughly imbecile ian. He was never permitted to manage or care for his estate. All his business transactions of any importance were conducted by his father. He was often violent, sometimes dangerously so. Some 70 reputable witnesses who knew him well, testify to such habitual conduct and deportment on his part as would seem to demonstrate the want of capacity to contract; and nearly, if not quite, all of them declare that he was incapable of comprehending the nature and character of the contract embodied in the mortgage and notes sued upon in this case.

It follows that the defense interposed by the respondent Sarah G. Davenport, as to the undivided half of the south half of said block 59, must be sustained, except in so far as the money borrowed from the trust company was used to remove valid liens from said property. To the extent of any such liens actually paid off out of said money, the trust company is entitled to relief. The doctrine of subrogation may well be applied to such a case. If the money advanced by the trust company was used to discharge a valid pre-existing lien, to that extent the respondent has been benefited. The trust company was not a mere volunteer; and having discharged a valid lien, it is entitled by subrogation to all the remedies which the original holder of such lien possessed as against the property. *Cottrell's Appeal*, 23 Pa. St. 295; *Mosier's Appeal*, 56 Pa. St. 80.

It is alleged that the money advanced by the trust company was used to discharge (1) certain mortgages to Richardson, Mrs. Hilton, and John Littig; and (2) certain delinquent taxes. As to these mortgages, I find from the evidence that they were executed to secure the payment of debts of George L. Davenport, and that George A. received no benefit from them; and as they cannot be upheld as contracts binding upon him on account of his want of mental capacity, I cannot hold that they constituted valid liens. As to the taxes it is otherwise. They constituted a valid lien, which was removed with funds obtained from complainants. They were paid on the twenty-eighth day of June, 1875, and the sum paid was $695.10. For one-half of this sum, with 6 per cent. per annum interest from the date of payment, complainant is entitled to decree against the said undivided half of the south half of block 59, the property of respondent Sarah G. Davenport.

Counsel for complainant have exhaustively argued the question whether it is necessary for the respondents to prove that the trust company had notice of the incapacity of George A. Davenport, and they cite numerous authorities to support the affirmative of this

question. Most of them are cases in which the estate of the lunatic has received the benefit of the contract which is assailed; and it is doubtful whether any well-considered case has gone so far as to hold that a contract of suretyship entered into by a person of unsound mind will bind him or his estate, even when the other party to the contract is ignorant of his incapacity and acts in good faith. However this may be, I must hold that the rule in a case like the present is settled, so far as this court is concerned, by the case of *Dexter* v. *Hall, supra,* which decides that such a contract is absolutely void and not merely voidable. In that case the facts were that Hall, while an inmate of a lunatic asylum in Philadelphia, had executed a power of attorney to one Harris, authorizing him to sell and convey certain real estate belonging to Hall, in San Francisco, California. By virtue of this power, Hall sold the real estate to persons under whom Dexter claimed title. After Hall's death his widow and heirs brought ejectment for the property, on the ground that the power of attorney to Harris was void for want of mental capacity of Hall to execute it. There was testimony for plaintiff tending to show that Hall was insane at the date of the power of attorney, and on the part of the defendant tending to show that he was sane. It appears from the statement of the case that "the defendant in rebuttal offered to prove that he had purchased the premises in good faith, for a full consideration, *and without notice of the alleged insanity* of Hall; but the court rejected the testimony." The court instructed the jury as follows:

"If at the time that Hall executed the power in question he was insane, and his insanity was general, the instrument was a nullity, and no title could be transferred under it.

"In that case the plaintiffs are entitled to a verdict.

"It matters not, if such were the case, what consideration may have been paid to the attorney, or with what good faith the parties may have purchased.

"The instrument, in such a case, is no more to be regarded as the act of Hall than if he was dead at the time of its execution."

The jury found for plaintiffs, and the judgment is affirmed by the supreme court in an elaborate opinion by Mr. Justice STRONG, in which the authorities are reviewed, and the conclusion reached that the ruling and instructions were correct. "The fundamental idea of a contract," says the court, "is that it requires the assent of two minds. But a lunatic, or person *non compos mentis,* has nothing which the law recognizes as a mind; and it would seem, therefore, upon principle, that he cannot make a contract which may have any efficacy as such."

It is suggested by counsel that a different rule prevails in equity, but I know of nothing in authority or reason upon which to base such a distinction. The rule as to the responsibility of a lunatic or person *non compos mentis,* upon his contracts, is the same in equity as in law; and if this court is bound to follow the ruling in *Dexter* v. *Hall,* it is conclusive of the question now under consideration. It is

insisted, however, that a different doctrine has been established in this state by several decisions of its supreme court, and that these decisions constitute a rule of property here, which this court should adhere to. It is true that the supreme court of this state has held that "equity will not interfere to set aside a conveyance, on the ground of the insanity of the grantor, to one who shall have purchased in good faith, and for value, in ignorance of the mental condition of the grantor." *Ashcraft* v. *De Armond*, 44 Iowa, 229. And also that "persons of unsound mind will be bound by their executed contracts, where such contracts are fair and reasonable, and were entered into by the other parties without knowledge of the mental unsoundness, in the ordinary course of business, and where the parties cannot be placed *in statu quo*." *Abbott* v. *Creal*, 56 Iowa, 175; S. C. 9 N. W. Rep. 115. And see, to the same effect, *Behrens* v. *McKenzie*, 23 Iowa, 333. These cases undoubtedly hold a different doctrine from that laid down in *Dexter* v. *Hall;* and the question is whether they establish a rule relating to land titles within the state of Iowa which this court should follow, notwithstanding a contrary decision by the supreme court of the United States. It is true that where any principle of law, establishing a rule of real property, has been settled in the state courts, that rule will be applied by the federal courts within the same state; and it makes no difference whether such rule of property grows out of the constitution or statutes of the state, or out of the principles of the common law adopted and applied to such titles. *Jackson* v. *Chew*, 12 Wheat. 153. It may be doubted whether the question here presented is not a question of equity law, and if it is, this court is not bound by the decision of the state court. *Nevens* v. *Scott*, 13 How. 268; *U. S.* v. *Howland*, 4 Wheat. 115; *Boyle* v. *Zacharie*, 6 Pet. 658. But, waiving the consideration of that question, I am of the opinion that the decisions of the supreme court of Iowa above cited do not establish a rule concerning land titles. They relate, not to land titles especially, but to a question of general jurisprudence, to-wit, the effect to be given to the contract of a lunatic, or person *non compos mentis*. It is true that the doctrine announced in these cases may, when applied to conveyances, affect titles to land in this state; but it is only necessary in the present case to determine the validity of the bonds executed by George A. Davenport. If these are held invalid as to him, the mortgage, which is a mere incident, falls with them. Can it be said that a rule respecting the validity, force, and effect of a contract entered into by a person of unsound mind is a rule of property? It is a rule which may indirectly, in a certain class of cases, affect title to property; but the same may be said of any ruling of the state courts respecting contracts. If the sum claimed as due upon a contract is sought to be fastened as a lien upon real estate, either by mortgage or attachment, a decision of the question of its validity will undoubtedly affect the title to such property. But it has never been claimed that for this reason the de-

cisions of state courts upon the validity of any class of contracts can be regarded as a rule of property. If the complainant had sued at law upon the bonds, it would not have been claimed that the state decisions in question were binding on this court.

It is difficult to see upon what principle we can apply one rule to the bonds when suit is brought upon them at law, and another when suit is brought upon them in equity. The decisions of the highest court of a state may be said to constitute a rule of property when they relate to and settle some principle of local law directly applicable to titles. A rule of property is one thing; a rule respecting the validity of a class of contracts which may or may not affect titles to property, is another and a different thing.

It has been held that the federal courts are not bound by the decisions of the state courts determining whether an instrument is a promissory note, (*Bradley* v. *Lill*, 4 Biss. 473,) and I suppose it would make no difference if such an instrument were secured by mortgage. The federal courts would still maintain the right to decide for themselves all questions as to its validity, and its force and effect, except such as are determined by local statute.

Again, let us suppose that the state courts establish a rule respecting the right of purchasers and assignees of negotiable paper, which is contrary to a rule upon the same subject established by the supreme court of the United States. It is well settled as a general proposition that this being a rule of general commercial law, the federal courts decide upon it for themselves. Would the rule be otherwise in a case where such an instrument happens to be secured by a mortgage?

The case of *Thomas* v. *Hatch*, 3 Summ. 170, is instructive upon the question, what is to be understood by the phrase "rule of property?" The case turned largely upon the construction of a deed. The supreme court of the state (Maine) had in another case construed the same instrument; but Mr. Justice STORY refused to adopt that construction, saying:

"If this were a question of purely local law, we should not hesitate to follow the decision of that learned court, for which we entertain the greatest respect. But the interpretation of a deed of this sort is in no just sense a part of the local law. It must be interpreted everywhere in the same manner; that is to say, according to the force of the language used by the grantor, and the apparent intentions of the parties deducible therefrom."

My conclusion upon this branch of the case is that the question whether a contract entered into by a lunatic or person of unsound mind is absolutely void, or only voidable, in case the other party can be charged with notice of the want of mental capacity, is a question of general jurisprudence, to be determined by general principles of law applicable alike to all the states; and that, therefore, this court is bound to follow the decision of the supreme court of the United States in deciding it. It follows, from these considerations, that

there must be decree for complainant against George L. Davenport for the whole amount of the bonds sued on, with interest and costs; and as against all of the respondents for the foreclosure of the mortgage sued on, as against all the property except the undivided half of the south half of block 59, in the city of Davenport, Iowa; and as against respondent Sarah G. Davenport, to be enforced as a lien upon said last-mentioned property, a decree for one-half of the sum paid to remove the tax lien upon said half block, and 6 per cent. interest thereon from the time of payment.