Paup and husband v. Sylvester.

2. ESTOPPEL: proof.

PAUP AND HUSBAND v. SYLVESTER, Administrator.

1. Pleading and practice: IN ACTION FOR PERSONAL PROPERTY. A petition in an action for the possession or value of personal property, which does not affirmatively show that the plaintiff is entitled to such property, is demurrable.

2. Will: SURPLUS MONEY: RESIDUARY LEGATEE. A testator, after bequeathing the most of his personal property to his wife and daughter M., bequeathed, in addition, to his said daughter M., "all surplus money possessed by him at his death," to be loaned out until she attained a cer-

tain age. *Held,* that said bequest of "*surplus money,*" etc., had refer-
ence to *money only,* and did not make her the residuary legatee of the
surplus *property* on hand at the time of the testator's death, and not
included in the specific legacies.

3. **Executor:** PROPERTY SET APART TO THE WIDOW. An heir cannot claim
the exclusive right to property set apart to the widow, by the executor,
under section 2361, Revision 1860, even though the widow is not entitled to
it because there is no longer a family within the meaning of said section.

> *Argu.* 1. When the property set apart for the use of the widow and family
> (Rev., § 2361) is no longer needed for that purpose, it falls into the general
> personal estate, and becomes assets in the hands of the executor, to be
> by him disposed of and accounted for according to law.

4. —— CASE EXPLAINED. The case of *Gaskell* v. *Case* (18 Iowa, 147), as to
right to and course of such property, explained and approved.

*Appeal from Jackson District Court.*

Tuesday, June 18.

Joshua S. Sylvester, the father of the plaintiff, Mary
J., departed this life August 15, 1866. In July, of that
year, he made his last will and testament, a copy of which
is attached to plaintiff's petition, and in its material parts
is as follows:

1. He directs the payment of his just debts.

2. Gives to his wife, the present defendant, one-third
of his land, describing it, including the homestead; also,
seven hogs, one cow, one horse, one two-horse plow,
one shovel plow, two bedsteads, one one-horse plow, one-
third of the growing crop; and directs that she shall give
to the plaintiff one-half of the things in the house when
she leaves her.

3. To his daughter Maria, the only other child who
was of tender years, and living with her mother, a former
wife, in Ohio, he gives five hundred dollars.

4. The executor was to sell all the personal property in
the October following on a credit of nine months.

5. The balance of the land was given to plaintiff, Mary J., and that devised to the wife, after her death, as *also all surplus money possessed by him at his death*, except seventy dollars per year bequeathed to his mother during her life; this surplus to be loaned until plaintiff was twenty-two years of age.

6. Names as the executors the defendant and one Cublage, and this was changed by a codicil making the latter the sole executor, who qualified and entered upon the discharge of his duties.

In November, 1866, the appraisers appointed by the County Court, left with the defendant and under her control the following personal property: Two-horse wagon, two mares, twenty-four bushels of wheat, set of double harness, fifty bushels of rye, five fat hogs, one drag, one hundred and fifty bushels of corn, one two-horse plow, one hundred bushels of oats, one grain cradle, and scythe and snath, six chairs and dining-table, one cooking-stove, two bedsteads, with beds and bedding, one clock and one cupboard — appraised at $680.10, all of which, under the laws of the State, was exempt from execution. The appraisers also set off to the widow one cow and calf and seventeen pigs, of the value of fifty dollars.

The petitioner alleges that at the time of her father's death she was unmarried, and resided on the homestead·; that she has since intermarried with her co-plaintiff, and removed from the homestead to that of her husband; that said Maria, the other heir, never resided with defendant, that said defendant is the only remaining member of the family, that the property claimed by her (and hereinafter named) is not necessary to support the family of the deceased, and that the homestead is occupied by defendant, and her children by a former marriage. She also avers that, by virtue of the will, she is the residuary legatee, and entitled to the possession of the following property: One

mare, one wagon, harness, five hogs, drag, grain cradle, scythe, six chairs, dining table, cooking-stove, clock, cupboard, calf, two beds and bedsteads, with bedding, ten hogs —of the value of $485; that she has demanded it of defendant, who has refused to deliver the same, but claims it as absolute owner; that defendant has sold a part of it, and unless restrained will sell or conceal all of it. The prayer is for possession, or judgment for the value, and for a specific attachment.

To the petition containing substantially the above facts, defendant demurred, and also moved to dissolve the attachment. The motion and demurrer were both sustained, and plaintiffs, standing upon the case made in their petition, appeal.

*Booth & Graham* for the appellants.

*S. S. Simpson* for the appellee.

WRIGHT, J.— There is no claim or averment that plaintiff did not get "one-half of the things in the house" at the time she left the homestead. In other words, it is not pretended that either or any of the articles claimed are hers, in virtue of that clause of the will which directs the mother to give her this half when she shall leave. And this being true, the action of the court below was most clearly correct.

1. PLEADING AND PRACTICE: in action for personal property.

Plaintiff's averments, we remark in the outset, are wanting in clearness. A leading difficulty is, she does not state whether the articles claimed are the same or other and different from those bequeathed to the widow. Some of them are the same in name, and would meet equally well the description given. This is also true as to the property set apart to the widow by the appraisers

Paup and husband v. Sylvester.

and that claimed by plaintiff. Whether she claims this, or other and different property, does not appear except by the remotest inference.

She is certainly not entitled to that bequeathed to the widow. For this, as against plaintiff, defendant took absolutely and in her own right, and not for the use of the family. But, assuming that it is other property, and whether it was or was not set apart to the widow by the appraiser, the demurrer was still properly sustained. Plaintiff claims this property as the residuary legatee, insist-

2. WILL: sur-<br>plus money:<br>residuary<br>legatee. ing that it was left to her as the *residuum* of the estate by the will. The position finds no support whatever in the will itself. She is given certain real estate, one-half of the household furniture, and the surplus money *on hand at the time of her father's death,* after providing for a sixty-dollar annuity to the grandmother. She does not take the *property* on hand, nor the money realized from the sale of the property; *but the money* on hand at the time of her father's death.

She is, therefore, no more the residuary legatee than the daughter Maria; that is to say, she takes what was devised or bequeathed to her. And then, if, after the debts are paid and the other charges, including that given to the grandmother, anything remains, it goes to the widow and heirs according to the general rules of descent. And plaintiff, therefore, has no more right at present to demand its possession or its value, or any part of it, than the widow or other heir.

If it was property set apart to the widow, and still so held, plaintiff has no claim. If properly set apart, and

3. EXECUTOR:<br>property set<br>apart to the<br>widow. the widow is not entitled to it because there is no longer a family within the meaning of the law, then it is assets in the hands of the executor, to be disposed of accordingly. And if not thus set apart, then it is still more unquestionably assets

in his hands. For the will, aside from the requirements of the law, contemplates the sale of the personalty, and here be it remembered that the condition of the estate is not disclosed, and hence we do not know but this very property, if not exempt, may be necessary to pay debts. At all events, as the case stands, this property was either rightfully in the possession of the widow, or it was legitimate assets in the executor's hands, to be by him disposed of and accounted for as required by law. Certain it is that plaintiff could not, in her own exclusive right, claim its possession, nor, at present, as against defendant, its value. If the executor shall fail to do his duty, he may be made liable. But with this we have nothing to do. And the argument, we may remark in concluding this part of the case, that section 2361 of the Revision refers to the estates of *intestates*, and not to a case where the decedent disposed of his whole property, is without force, as it does not appear that the will did include the whole property. It, at least, does not appear that the plaintiff is the residuary legatee. Nor, again, does she show, for the reason already stated, that she has a future estate or interest in it within the meaning of section 3225 of the Revision. There is no suggestion that the executor is not discharging his duty, nor that the property will be lost to her, if by possibility she should be entitled to any part of it or its proceeds, if her rights are not now protected and recognized. Neither upon authority, nor in consonance with the reason of the law, can an heir, upon the case made, be entitled to the relief here sought.

Appellants refer to and rely upon *Gaskell* v. *Case* (18 Iowa, 147). That case holds (following *Wilmington* v. *Sut-* 4. —— case ex-    *ton*, 6 Id., 44, and *Schaffner* v. *Guitzmacher*, plained.    Id. 137) that the property set apart to the widow under section 2361 does not become hers absolutely; but

that if no longer needed and used by her for the purposes therein contemplated, it falls into the general personal estate, and becomes liable, not to debts, but to distribution, according to law. And to this opinion we still adhere. In that case, however, it was alleged that the second husband had taken the property into his possession and sold and converted the same to his own use. The very basis of his defense was that it belonged to the wife absolutely, and that, hence, she had a right to sell it, or authorize him to do so, without liability to the heirs. This position was held untenable. But that case is no authority for the proposition that the heir may take such property from the widow, who remains in possession, and using and enjoying the same as such. It is not held in that case that if the wife and husband retained the possession there could have been a recovery; but the decision is limited strictly to the case before the court.

Whether the widow—the children all having attained their majority, and left the homestead—if she continues to keep house, and in good faith manages and cares for, and needs the use of the property thus left and set apart, can be compelled to surrender it in whole or part to them, is a question of much doubt, and we forbear any expresion of opinion thereon until it shall actually arise. The case relied on does not go to this extent; and more than this we need not say at present; and especially so, as the property in controversy, if not set apart becomes assets in the hands of the executor, may be taken for debts, and plaintiffs would clearly have no cause of action.

Affirmed.