## Ellsworth v. Ellsworth, Adm'r.

1. **Administration: property exempt to widow: estoppel.** Property which under the statute is exempt to the widow, as the head of the family, is not to be deemed assets in the hands of the administrator, nor to be administered upon as such.

2. —— Consent on her part to such administration, under a misapprehension of her rights, will not estop her from afterward claiming the property or its proceeds.

3. —— So, too, in order to entitle a party to claim the benefit of an estoppel of this character, it must be shown that he acted in good faith, relying upon the estoppel and in the belief of its truth.

### *Appeal from Hardin Circuit Court.*

### Wednesday, February 21.

The plaintiff is the widow of George Ellsworth, deceased, intestate. The defendant is administrator of the estate of said decedent. This proceeding was instituted in the circuit court by the widow, to establish her right to certain articles of personal property, a span of mares, a lumber wagon and a set of double harness, which belonged to the decedent at the time of his death. The circuit court found the property to belong to the plaintiff and made an order accordingly. The defendant appeals.

*Huff & Reed* for the appellant.

*E. W. Eastman* for the appellee.

Cole, J. — The following are the substantial facts of the case, concisely stated : George Ellsworth died in Hardin county, September 22, 1868, leaving no children, and leaving the plaintiff, his widow, to whom he had been married about six months. Prior to his death he had been a farmer and teamster, supporting himself and wife as a family, by the use of the team. Shortly, after his death, she abandoned housekeeping and farming and went to live with her mother, leaving the team with another for use and sale. On the 12th of November following his death, his widow inquired of the county judge about administering upon the estate, and was advised that administration might be dispensed with and expense saved. On the 16th

of November letters of administration were, without notice to plaintiff, granted to the defendant, who was a relative of the deceased, and who had, as surety, signed a note with decedent and another, upon which a judgment for about $350 had been recovered against all the makers, prior to the death of the intestate. On the 17th of November the defendant informed the plaintiff of his appointment, to which she then made no objection, and expressed a desire, as being that of her deceased husband's also, that the property be sold and the debts paid; she had before expressed the same desire to others, and she never afterward consented to or forbid the sale; on the same day she gave to defendant information as to the items of property belonging to her deceased husband, and also of his debts. On the same day (November 17, 1868), the defendant made an inventory of, and had the property appraised by persons duly appointed therefor, but set apart nothing for the widow, and on the 19th of December following he sold the property in controversy, pursuant to order of the county judge, for cash in hand, at the aggregate sum of $286.50. On the first day of the February term, 1869 (it being the first term of that court, February 8), the plaintiff filed her petition, claiming the property as exempt to her as the head of the family, and widow and heir of the deceased, and that it was not liable to sale by the administrator; she asked for the property, if not sold, or if it was sold, then for its avails, and also for a reasonable sum in provisions, other property or money for her support for one year, etc. Notice of this petition was given to defendant the same day it was filed; various claims were filed but none were allowed till February, 1870, and the claim on the judgment against decedent and another of the administrators, as surety, was not filed till that time. On the day after this petition was filed and notice thereof given him, the administrator paid on the judgment $192.35, the proportion due from decedent, and

also paid $72 on other claims, leaving then in his hands $22.15. It appears that plaintiff was aged eighteen years at the time of her husband's death, and did not in fact know, until after the sale, that she had any rights to or in the property till all debts were paid.

Under our statute (Rev., §§ 3304, 3305 and 2361) it is not claimed that the property in controversy could " be deemed assets or administered upon as such," unless the rights of the widow have been abandoned or waived by her conduct or declarations. But it is insisted by appellant's counsel that the plaintiff waived her rights in the property by her declarations made to the administrator on the day following his appointment, and upon which he had acted. In other words, that the doctrine of estoppel will apply justly to her and prevent her from claiming the property now which she did not then claim. There are, to our minds, several very satisfactory answers to this position of the learned counsel. In the first place, the property was not assets in his hands, and, while it was his duty to have it inventoried without appraisement, it was also his duty to allow it to remain with her "until disposed of according to law." There is no pretense but that defendant well knew this to be his duty ; indeed, the printed letters of administration gave him express directions in this particular. He knew that he had no right to the property, and it was his duty to so advise the widow ; and he testifies himself in this case that she did not tell him in so many words that she wanted the property sold. Without now entering into the discussion of the question whether or to what extent a party can be relieved from a mistake of law, we feel clear, that to entitle a person to retain property or its avails, to which he well knew he had no title, he must show, at least, a plain and specific consent of the rightful owner to his appropriation of it. In this case, no such consent is shown. A doubtful consent or a mere implied one will not do. And, again, in

order to afford a basis for the just application of the doctrine of estoppel, it is necessary that the party claiming under the estoppel should have acted in good faith, relying upon the estoppel and in the belief of its truth. Here, the defendant knew that he had no title, and yet he seeks, by a doubtful expression, to bar a clear right. This he cannot do. It will be remembered that the plaintiff asserted her claim to the property or its proceeds before the defendant had appropriated any part of the money received for the property; and the court below only charged defendant with the amount he had actually received for the property, and not with its value. Under the circumstances, the defendant ought not to be made liable for more.

But it is further claimed that since the widow abandoned housekeeping and the business of farming, and went to reside with her mother, that she thereby waived her rights to this property, which would otherwise be exempt. This point has been several times passed upon by this court, and in effect ruled against the position now assumed by the appellant's counsel. In *Wilmington, adm.*, v. *Sutton*, 6 Iowa, 44, it was held that the administrator could not recover property exempt from administration, although sold by the widow, and that the widow holds it or its proceeds for the heirs, etc. The case of *Schaffner* v. *Grutzmacher*, 6 Iowa, 137, in its principles accords with the last. The case of *Gaskell* v. *Case*, 18 Iowa, 148, expressly holds that when the property exempt from administration is no longer needed or used by the widow as the head of a family, it does not become liable for debts, but to distribution according to law. *Paup and husband* v. *Sylvester*, 22 Iowa, 371, follows the previous cases, or rather approves them; so, also, of *Meyer* v. *Meyer*, 23 Iowa, 359.

Upon principle, too, it must be, that the property of a decedent which is exempt from liability for his debts when held by him in his life-time, being exempted from admin-

istration, also, will continue to be exempt from liability for those same debts.

In no other way could the liberal and humane provisions of the statute be fully effectuated. By our exemption statute, the particular items of the debtor's property enumerated cannot be taken for the payment of his debts, during his life-time. When he dies, no new rights of the creditor attach, but the exemption continues for the benefit of his widow and children; and the property passes directly to them, upon being ascertained and set apart. They take the property for the same use as it was held by the father before his death — for the benefit of the family. When this use is accomplished, if it shall so happen that the property is not all consumed, it will be distributed according to the equities of the particular case, under our statute of distributions.

Affirmed.