Meyer v. Meyer.

MEYER v. MEYER *et al.*

1. Homestead: DOWER: WIDOW CANNOT ENJOY BOTH. It was not the intention of the legislature, that a widow should enjoy at the same time both dower and homestead in the same real estate of her husband. It was accordingly *held*, when a widow on her own application had her dower set off so as to include the dwelling-house of the deceased and a portion of the forty acres comprising the homestead, that she could not claim the residue under a homestead right.

2. —— DISPOSITION OF: CASE DISTINGUISHED. The setting off of dower from the homestead, upon the application of the widow, is a disposition of the homestead according to law, within the meaning of section 2295 of the Revision. The case of *Nicholas* v. *Purzell*, 21 Iowa, 265, distinguished from the present one.

3. —— COMPULSION OF WIDOW TO ACCEPT DOWER. Whether the heirs can compel the widow to accept dower and give up the homestead right, *quere*.

4. Exemption: THRESHING MACHINE. A threshing machine used by a farmer to thresh the grain of other people for hire, as well as his own, is not exempt from execution, and is assets in the hands of the administrator.

5. Executor: PROPERTY SET APART TO THE WIDOW. Property set apart to the widow, under section 2361 of the Revision, is not absolutely hers, and she has no right to sell the same and receive the proceeds for her own use. *Gaskill* v. *Case*, 18 Iowa, 147; *Paup* v. *Sylvester*, 22 Id. 371.

*Appeal from Scott District Court.*

WEDNESDAY, DECEMBER 11.

I. DOWER AND HOMESTEAD: NATURE AND EXTENT OF RIGHTS: EXEMPT PROPERTY, ETC.: FACTS RELATING TO THE HOMESTEAD. — John Meyer died in February, 1866, leaving a widow and children.

He disposed of his property by a will, which has been duly probated. By this will, he bequeathed a certain sum of money to his wife in lieu of dower and of homestead rights, and devised all his real estate to certain of his sons, defendants herein. He also made a disposition of his personal property. The homestead occupied by the testator and his wife (the present plaintiff) he devised to his sons, August and Henry Meyer.

The wife refused to take under the will, and elected to claim dower under the statute, and upon proceedings instituted by her, dower was assigned to her as below stated.

John Meyer, her husband, died possessed of over one hundred and sixty acres of land, of which more than forty acres were in one body. During his life the husband did not set apart the homestead by metes and bounds, or make any record thereof.

He had but one dwelling-house on the land. In the proceedings to have dower assigned to the plaintiff, there were assigned to her the dwelling-house, out-houses, and fifteen and sixty-three hundredths acres of the land upon which these were situate. In addition to this fifteen and sixty-three hundredths acres set apart to her as dower in fee, she claims in this proceeding to recover of August and Henry Meyer, devisees and sons of her husband, twenty-four and thirty-seven hundredths acres of land, sufficient, with the fifteen and sixty-three hundredths acres, to make in all forty acres.

This claim on the part of the plaintiff is resisted by the devisees. This is the first question in the case.

II. *Facts concerning the threshing machine.* The plaintiff also claims, as the widow of her husband, that she is entitled to the undivided one-half of a threshing machine owned by her husband. This she claims as exempt from execution, and this claim is denied by the executors who are made defendants. This presents the second question in the case. The further facts in this respect appear in the opinion.

III. *Facts as to the property claimed by the widow.* Subject to the rights of his wife, given by law, John Meyer bequeathed all his personal estate to his sons, who are defendants herein.

The appraisers under the will made out a list of the following goods and chattels, and returned the same to the County Court as being exempt from execution, and as not being assets to go into the possession of the executors, viz. : one musket, shovel, spade, half-bushel meas-

Meyer v. Meyer.

ure, ax, cow and calf, two horses, one wagon, five hogs, twenty-one pigs, one plow, hay rack, sleigh and fanning mill.

The legatees, by cross petition, claim this property, as against the plaintiff, subject only to her third interest therein.

This claim of the legatees the plaintiff resists, and she claims the right to dispose of the same, and particularly the hogs, and to apply, without liability to account therefor, the avails of the sale, to her own use in providing for her support. And this is the third and last question in the case. There were set apart to the plaintiff and her child by the decedent (the defendants being the testator's children by a former wife), for their support for one year, the following, to wit: all clothes of the plaintiff and the child, with trunks, bedstead and bedding for two persons, household and kitchen furniture, to the value of one hundred dollars; two hundred and fifty pounds pork; twenty bushels of wheat, and two hundred and fifty dollars in money, in relation to which there is no controversy in this action.

The District Court decided against the plaintiff, as to her claim of homestead; as to her right to the threshing machine; and also as to her right to sell and convert to her own use the personal property above mentioned. For this judgment the learned judge below expressed his reasons in writing. His opinion is subjoined to this statement, and will be found in a note.* Plaintiff appeals.

---

* OPINION OF RICHMAN, J. — The circumstances of this case are peculiar, and the likelihood of the recurrence of such circumstances call for legislation or judicial construction by the court of last resort in the State.

The homestead right and dower right are both given without restriction by law, and are given in such a way that they must necessarily come in conflict. The law declares (Rev. § 2282): "The homestead must embrace the house used as a home by the owner thereof." It further declares (§ 2295) upon the death of either husband or wife the survivor may continue to possess and occupy the whole home-

*Grant & Smith* for the appellant.

1. The homestead. Dower is a right at common law, protected and provided for by statute. Homestead is a right, given by statute, independent of dower; and may be a larger or less estate than dower. The whole homestead is exempt from execution, upon the death of the husband. Code, § 2295. The survivor continues to occupy it, the *whole* homestead, until otherwise disposed of by law. If husband or wife die, so that there is no occupant, it goes to the heirs free from antecedent debts. Both dower and homestead are given by law, and neither in lieu of the other. Suppose dower exceeds the homestead, when the survivor dies, will the other side say, that the homestead does not descend according to law, to the heirs, exempt from debts? It by no means follows, because part of the homestead may be included in dower, that

stead until it is otherwise disposed of according to law. The law in relation to dower (Rev. § 2477; Laws of 1862, p. 174) declares that, "One-third in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest which has not been sold on execution or other judicial sale, to which the wife has made no relinquishment of her right, shall, under the direction of the court, be set apart by the executor, administrator or heir, as her property in fee simple, on the death of her husband if she survives him." It further declares (Rev. § 2426), "such share shall be so set off as to include the dwelling-house and the land given by law to the husband as a homestead, or so much thereof as will be equal to the share allotted to her by the last section, unless she prefers a different arrangement. But no different arrangement will be permitted where it would have the effect of prejudicing the rights of creditors." It seems to be clear that both rights cannot exist in the same property at the same time. If the dower right gives a fee in the property, this is superior to a mere homestead right. There cannot be a homestead without a house (generally speaking), and if dower be set apart under the law embracing the house used as a home by the husband while living, the homestead, as such, ceases to exist. Suppose a case where the *whole homestead* is set apart to the widow as dower, the widow becomes the owner in fee, and, being the owner in fee, may sell or dispose of it in any manner she may think best. What becomes of the homestead in such case? If dower be set off, as it may be, under circumstances so as not to include the dwelling-house, nor any of the land given by law to the husband, as a homestead, then a case would arise under the law where the widow would have her full dower in fee, and the right to occupy the whole homestead also. If this be an inequality in the law, all that can be said is, "it is so written." There are many cases which might be supposed,

Meyer v. Meyer.

therefore the residue is lost and the party cannot claim it. These acts for dower and homestead are always construed liberally. If the widow did not claim dower, her homestead right would be conceded. Has the statute made any limitation? "The homestead belongs not alone to the husband, but it is wisely set apart by law for the benefit of the family, and is not to be taken from them by law, until both husband and wife shall die." *Floyd* v. *Mosier*, 1 Iowa, 511; *Dickson* v. *Chorn*, 6 Id. 30. "The surviving widow is, as to the homestead, as much the head of the family, and entitled to the control of the rent, as the husband when living." Id. "The dower is the exclusive right and for the exclusive benefit of the wife. The homestead for the family. Leasehold property may be the subject of homestead." *Pelen* v. *De Bevard*, 13 Iowa, 53.

2. The threshing machine. The plaintiff claims, that

and many difficulties suggested, but it is not deemed necessary now to do more than to announce the opinion of the court, that in the present case the plaintiff (the widow) is not entitled to the use and occupancy of the 24 27-100 acres claimed as being part of the homestead of the husband. It might be remarked here, that no homestead was ever marked out or claimed specifically by the husband; that a homestead does not necessarily include forty acres of land; it may be less, but can be no more. I am also constrained to hold that a threshing machine owned and used by a farmer for threshing his own grain and "*for threshing the grain of other people for gain*," is not exempt from execution, and consequently that the widow has no claim thereto. Whether a threshing machine is exempt in any case, is questionable, unless when it is permanently attached to a building, so as to become part of the real estate of a homestead. A threshing machine is not a "tool," nor an "instrument," it is a "machine." As to the articles set apart to the widow under section 2361, she has a right to the use of them while she remains a widow and the head of a family, and has any use for them. They are to be disposed of according to law, when she no longer requires them for use. She has a right to use the articles, and such as perish or are consumed in the using, she is not accountable for. She is not responsible for ordinary wear and tear. But she has no right to dispose of the articles for the purpose of converting them. If it should become absolutely necessary for her support to dispose of them, I think she could do so, but not otherwise. It is supposed that the case will go before the Supreme Court, and I think it desirable, as the law in relation to homestead and dower is not as clear as it might be, and it seems to me, requires either legislative or an authoritative expression.

J. SCOTT RICHMAN, *Judge.*

she is entitled to this as exempt from execution, as the "proper tools or instrument of a farmer." Code, § 3304. The fact that a threshing machine is just as proper a tool for a farmer, as a plow or a harrow, is not to be denied; but it is contended, that it does not go to the widow under section 2361, because the husband also used, it to thresh other people's grain. This argument has no force. Suppose the husband hires out his team, or his plow, or his harrow, that he uses in cultivating his land, does that deprive him of the right to hold it as exempt from execution? Certainly not. The law of exemptions is not only intended to protect the farmer, but also to promote good husbandry. What poor farmer could or would buy buggy, plows or mowers, reapers, grain binders, horse pitchforks, which increase his gains and diminish his labor, if the court was to refuse exemption either from the character or use of the instrument? The sole question is this: Is the instrument a proper tool for a farmer to cultivate his land? If so, it is exempt and goes to the wife, and not to the heir or creditor.

3. The act of the wife in taking dower does not deprive her or her children from the benefit of the homestead. The dower may be material in a future division, but it does not detract from her present right.

4. The claim that the widow has no right to sell any of the exempted property. See Code, § 2361. We believe that the specific case complained of, is the best illustration of the folly of this proposition. Hogs are exempt from execution. If their doctrine be true, she cannot eat them, or sell what she does not want to eat and get other food in place of it. The widow holds this exempted property just as she holds the homestead, for the support of herself and the children. She holds it just as the husband holds. The corn, the hay, the oats, the pigs, the sheep, the cow and calf, are all to be used for consumption, and are con-

sumed by use. They are all of them to be used and enjoyed, and most of them consumed in the use. Perishable things — hogs, cattle, sheep, oats, corn and hay — are consumed in their use, and the widow is no more accountable to the creditor or heir than the husband was. They remain with her and the family for their use, and no court will restrain her from selling them for use. Otherwise, hogs, cows, sheep, if kept to old age, would be of no value, a bill of expense to keep, and a burden, not a benefit.

*Davison & True* for the appellees.

1. While it is true that upon the death of the husband, the widow may continue to possess and occupy the homestead until it is otherwise disposed of according to law, yet it is also true that the homestead must embrace the house and buildings used as a home by the deceased, and the lands not to exceed forty (40) acres whereon the same are situated; and subject to the widow's rights, it may be devised like other real estate. Rev. §§ 2282–2285, 2295, 2298.

It is also true that the widow may at any time waive or relinquish her right to hold the homestead, whereupon it will descend to the heirs of the decedent or go to his devisees. *Floyd* v. *Mosier*, 1 Iowa, 512.

The plaintiff by causing her dower, whïch is in fee, to be assigned, embracing the house and buildings and the fifteen $\frac{6 3}{1 0 0}$ (15$\frac{6 3}{1 0 0}$) acres of the land on which they stood, and adjoining thereto, has waived all the rights she might otherwise have had, and is estopped from claiming a homestead.

The house to be assigned must be the dwelling which was occupied by the decedent in his life-time, and must belong to his estate at the time of the application being made to set off the homestead.

In this instance there is none, the house and the fifteen $\frac{63}{100}$ ($15\frac{63}{100}$) acres of land whereon it was situated, having been assigned and set off as the dower right of plaintiff, no longer belongs to the estate; another party (the plaintiff) owns it in fee. The land which is now asked to be set off as a homestead, not only has no house on it, but is separated from the house which was occupied by the deceased in his life-time by the $15\frac{63}{100}$ acres of land, assigned to plaintiff in dower as aforesaid.

It will not be contended by counsel that on the death of Mr. Myer, had he only a life estate in said buildings and $15\frac{63}{100}$ acres of land, although adjoining the lands of his estate, his widow could hold a homestead in the remainder of said estate. And why? Because on his death as to that tract, his estate ceases. And how is the cause at issue at variance with the case supposed?

Mr. Myer held certain lands in which his wife held a contingent right of dower, which at the instant of his death ripened into an absolute estate in fee—undivided it is true, but susceptible of division or partition. The widow causes her estate in fee (that is her dower), to be admeasured and set off to her by metes and bounds, which embraces all of the buildings occupied by the deceased in his life-time, and the $15\frac{63}{100}$ acres of land on which they were situated.

Go one step further, and suppose that plaintiff, on the assignment of her dower, had immediately conveyed her $15\frac{63}{100}$ acres in fee to another, would it be contended that she could, after that, cause to be assigned to her as a homestead $24\frac{37}{100}$ other acres of the estate?

We contend that by causing her dower to be assigned as aforesaid, plaintiff has waived her right of homestead and is estopped from claiming the $24\frac{37}{100}$ acres additional, and the same go to the devisees of Myer.

All the law learning respecting the comparative es-

tates of dower and homestead (wherein the homestead is
treated as the higher estate, and where it is held that
both may exist in and be assigned of the same tract of
land) is founded on the dower at common law, and not
on the statute dower in fee.

.2. Plaintiff claims the undivided half of a threshing
machine as being exempt from execution, under section
3304 of the Revision. But is it the proper tool or instru-
ment of a farmer, in the sense used by the statute? In
other words, does the law exempt under that head any
and all machines or instruments that a farmer may, un-
der any possibility, use in the cultivation of his farm,
without reference to the necessity of the case? Is it not
rather the object of the law to exempt the ordinary imple-
ments of husbandry only, such as all farmers use and
must have to cultivate successfully the forty acres of·
land exempted to him? Otherwise a man could with-
draw from his means $300 or $400, and put it into a
threshing machine, where his creditors could not reach it,
to be used perhaps not to exceed three or four days yearly
in the cultivation of his forty acres of land. That it is
not an essential article of husbandry, is evident from the
fact that not one farmer in a hundred has one. They
are usually owned by parties who make grain threshing
their business. It has been held in New York that a
threshing machine is not exempt under a statute very
similar to ours. *Ford* v. *Johnson*, 34 Barb. 364. Again,
it is evident that this machine was not purchased and
held by the deceased as an implement of husbandry
necessary to carry on his farm, from the fact that it was
used through the season in threshing for others for gain.

3. Plaintiff is not entitled to the property left with
her and the family as exempt from execution, but it is
subject to distribution with the other property, and is
not hers to dispose of, and apply the proceeds to her own

use. That plaintiff has no such rights as contended for, is fully established in the following cases: *Wilmington* v. *Sutton*, 6 Iowa, 44; *Schaffner* v. *Grutymacher*, Id. 137; *Gaskell* v. *Case*, 18 Id. 147; *Paup* v. *Sylvester*, 22 Id. 371.

DILLON, J.—I. Of all statutes, none should be plainer, more exact and certain in meaning, than those regulating the distribution and descent of property. It may be quite confidently affirmed, that of all existing statutes in this State, none are, in many material respects, more obscure and uncertain than those which undertake to define what becomes of, and who is entitled to, a man's property upon his death. In illustration of this remark, we may refer to the embarrassing questions which have arisen under the act respecting aliens. Rev. ch. 100, art. 6; *Perczell* v. *Sindt*, 21 Iowa, 540; *Stemple* v. *Herminghouse*, 3 G. Greene, 408; *Krogan* v. *Kinney*, 15 Iowa, 242; *Rheim* v. *Robbins*, 20 Id. 45; *Greenfield* v. *Stanforth*, 21 Id. 595. And also, under the act of March 15, 1858, prescribing the descent of property. Rev. ch. 100, art. 7; *Norris* v. *McGaffick*, 21 Iowa, 201.

And now this record presents two similar questions of equal difficulty, and that is left to judicial construction which should be unmistakably defined by legislative words.

Perceiving that unless the statutes, in this respect, are revised, many other questions of great doubt will arise, we limit our decision strictly to the case in hand, with reference to which the subsequent observations are to be taken.

The plaintiff having had, at her own instance, the only dwelling-house and the fifteen and sixty-three hundreths

1. HOMESTEAD:
DOWER:
widow cannot
enjoy both.

acres of land set off to her in fee as dower, can she have assigned, or set apart to her, in addition to this, twenty-four and thirty-seven hun-

dreths acres, or enough with her dower to make forty acres, the amount to which the husband would have been entitled as a homestead? We think not.

The homestead right now claimed by the wife is based upon chapter ninety-eight of the Revision. The legal title to all the land was in the testator, John Meyer.

Now the statute (Rev. § 2298) is express, that, "subject to the rights of the surviving husband or wife, as declared by law, the homestead may be devised, like other real estate of the testator."

The testator did devise it to his sons. This he could do, but this disposition must be subject to the rights of the plaintiff, his surviving wife. What are those rights?

As to homestead, those rights are defined by section 2295 of the Revision, which enacts, that, " upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law." This gives to the survivor the right " to possess and occupy," but does not confer title.

For the argument, it may be admitted, that, if dower had never been assigned to the plaintiff, or if she refused to have it assigned, she might, as the head of the family, have continued to occupy the house used as a home at the time of her husband's death (Rev., §§ 2278, 2295), and forty acres of land in connection with the house, as long as she should see proper, and against the wishes of the heirs or devisees of the husband.

But, while thus "possessing and occupying," in her character as the surviving head of the family, she could not alien or dispose of the land. The land has been disposed of by the will of the husband; and this disposition the statute, as we have before seen, allows him to make. Rev. § 2298. Now, it is plain, that the statute,

in reference to the occupancy and disposition of home-steads, contemplates a house used as a home.

Under other provisions of the statute (ch. 151, Laws 1862, p. 573; Rev. § 2426, *et seq.*), the widow has pro-ceeded to have her dower assigned to her, so as to include the dwelling-house and enough of the land to equal the amount in value to which she was entitled.

This she now owns in fee. She may dispose of it as she pleases. If she continued to occupy it as a home — as *her* home — it would doubtless have impressed upon it the homestead character and be exempt as such. Rev. §§ 2295–2297; act April 8, 1862, Laws 1862, p. 147, § 2.

The fee simple title thus acquired by the plaintiff, super-sedes or takes the place of the possessory right which she would otherwise have had as the surviving wife.

We see no warrant in the law for annexing to this fee simple title, a homestead right in other land.

The title to this twenty-four and thirty-seven hun-dredths acres, under the will, is in the sons. If a home-stead right were allowed therein to the widow, the title would not be in her. It would still be in the sons, sub-ject to the homestead right. So that we should have this result: the house and the fifteen and sixty-three hun-dredths would belong in fee simple to the wife; the twenty-four and thirty-seven hundredths acres would belong to the devisees, with a right in the wife to occupy it as a homestead or as part of her homestead. Such a result we do not believe was contemplated by the legisla-ture.

Again, aside from these argumentative considerations against the claim of the plaintiff, the language of section two, of the act of April 8, 1862, above referred to, and of section 2426 of the Revision, seems also to be against it.

Thus if the property is insusceptible of division and is ordered to be sold, the widow's interest, though the prop-

erty sold be a homestead, is limited to one-third of the proceeds. And with this money it is enacted that she "may procure a homestead which shall be exempt from liability for all debts, past or prospective, from which the *former homestead* would have been exempt in her hands."

So by section 2426 of the Revision, she may have assigned to her as dower "the ordinary dwelling-house and the land given by law to the *husband*, as a homestead, or *so much thereof* [not the whole forty acres necessarily, but so much thereof] as will be equal to the share allotted to her by the last section [that is the one-third in value], unless she prefers a different arrangement."

The fair implication, if not the plain language, of these provisions, is against the right of a widow to claim part of what was her husband's homestead, including the house, as her own in fee as dower, and the residue in the capacity of surviving wife of the former owner.

In other words these provisions of the statute tend very clearly to show that the legislature did not intend that the wife should enjoy at the same time, both dower and homestead in the same land. If both had been intended, then it would have been provided that if the land were sold, there should be paid to the widow the value of both, *i. e.* one-third of the proceeds as the value of her dower, and also the value of her possessory homestead right. But the statute gives only the value of the dower interest. This was so under the Code of 1851 (§§ 1404–1406). It was likewise so under the act of 1853 (Rev. 2478), which limited the widow to one-third of the yearly rent, making no allowance for the value of any homstead right in the land sold. And the act of 1862 substantially and almost literally restored sections 1404, 1405 and 1406, of the Code of 1851.

Inasmuch as, if the whole land in the case at bar had been ordered to be sold, the widow would have received

only the one-third part, and would have received nothing for her supposed homestead right, this tends very strongly to show that she has no homestead right. For why should she be entitled to more if the land is not sold than if it is?

We have very carefully examined all the legislation on this subject, and feel quite satisfied. that the legislature did not intend to give the widow a homestead in land, in addition to the dower, after the latter has been set off to her.

This view accords with the special provisions of the homestead act before referred to (§§ 2295–2298). She may "occupy the whole homestead until it is otherwise disposed of according to law." It is otherwise disposed of according to law if it is, upon her application for dower, ordered to be sold, because not susceptible of division, and it is thus sold and one-third of the proceeds paid to her, with which she may buy a new home.

2. —— disposition of.

If this is so, why is it not also "otherwise disposed of according to law" if it is set apart to her in fee as dower, upon her application? After that she occupies her own homestead, not her husband's, so to speak.

This view is also consistent with the language of sections 2296, 2297 and 2298. Whether the twenty-four and thirty-seven hundredths acres will not be held by the sons "exempt from antecedent debts of their father or their own," we need not decide.

Nor need we decide, if the widow had not applied for dower and had it set off to her, whether she could have been compelled by the sons to elect to take dower, or have it assigned to her and give up the homestead right contemplated by section 2295 of the Revision. For aught decided herein, it may well be that the widow would have the right as against the creditors, heirs, or devisees of the husband to say, "I am satisfied

3. —— compulsion of widow to accept.

with my homestead right," and hold as a homestead the entire forty acres so long as she continues *to occupy* it as her home.

But if she proceeds for dower and has dower set apart to her so as to include the dwelling-house and land adjoining, this deprives her of the homestead right which she previously had in the land by reason of being the survivor, as contemplated by section 2295 of the Revision. In such cases the dower excludes or supersedes the other. Whether the dower right and the homestead right are cumulative, after dower assigned, provided dower be assigned in the non-homestead portion of the estate, we need not determine positively, though if the foregoing views are correct they may lead to the conclusion that the legislature did not in any case intend to give the widow the lion's share, by allowing her, in addition to exemptions and her distributive share, to retain the old homestead as such, in addition to dower in fee, after the assignment of the latter. What we decide is, that the plaintiff, having preferred to take her dower, as she did, cannot claim the twenty-four and thirty-seven hundredths acres as against the devisees. We are aware of the objections that may be made to this view. But the difficulties surrounding any other view are, it seems to us, much greater.

It may be thought that the case of *Nicholas* v. *Pursell* (21 Iowa, 265) is not entirely consistent with the foregoing views. It may be proper to observe, respecting that case, that it differs from this, as it involved no question of dower, or as to the effect of an assignment thereof. The relative nature of the dower and homestead rights was not discussed in that case, nor how far the taking of dower would affect the otherwise existing homestead right. The question mainly considered in that case was, whether the widow living in and upon the homestead left

by her husband, could, at the instance of her heirs, be compelled to submit to a partition of the homestead; and the court held that she could not.

Without adopting all the reasoning and illustrations of the learned judge below, we think his conclusion is correct, and his judgment upon this branch of the case is affirmed.

II. The threshing machine was used by the husband to thresh his own grain, and that of other people for hire. 4. EXEMPTION: Under section 2361, plaintiff claims that this threshing-machine. is not assets to be administered, because, as she asserts, it is property which, under sections 3304 and 3305 of the Revision, is exempt from execution. Whether it is thus exempt is the only question made. It is claimed to be exempted under the language, "the proper tools or implements of a farmer." Taking these last sections together, we are of opinion that they intended to exempt only the ordinary and usual tools of husbandry, and do not extend to a threshing machine owned by a farmer to thresh his own grain, and that of others for hire.

This opinion rests upon the nature of the machine and the obvious purpose of the exemption law. Rev. §§ 3304–3309. The machine is complicated and expensive. Judges and legislators must be taken to be conversant with the common facts of every day life. Such a machine cannot be operated with less than from six to ten horses. It also requires a large force of men. It costs several hundreds of dollars to purchase one. Not one farmer in twenty — perhaps not one in a hundred — owns a machine of this character. The farmer, in general, does not find such a machine a profitable investment. It is cheaper to hire than to own. In consequence of these facts, threshing machines are operated almost exclusively by persons who buy and own them on purpose to thresh grain for others for hire. In a few instances two or more

farmers club together and buy one in common. Very rarely does a farmer buy such a machine for his own use alone. If he owns one, it is generally with a view to "job" or thresh for others. And such would seem to have been the purpose for which the testator owned the machine in question. A few machines do all the threshing for a township, and threshing grain may be said to be a business by itself. In view of these facts the exemption law was passed. In view of these facts the law should be construed. The law makes no extravagant exemptions. It is intended for the poor rather than the rich. Its design is to enable the debtor and his family to live, by shielding from the creditor the ordinary and usual means of acquiring a livelihood.

The exemption is of necessary articles, tools, instruments, etc., and not articles and things merely convenient. Thus it exempts a team of two horses, but a team of two horses cannot operate such a machine. That such a machine is not a necessary implement of husbandry is apparent from the fact, that most farmers neither own nor care to own one.

These circumstances distinguish a threshing machine from a plow, reaper, mower, binder or fanning mill, and the latter may well be exempt and not the former. It might be very convenient for a farmer to own a small portable mill, run by steam, to grind the grain into flour, after it is threshed, but would it be exempt from execution? Why may it not be if a threshing machine be held to be exempt? Before concluding, it may be observed, that under a statute similar in its objects and not essentially dissimilar in its language, a threshing machine has been recently held in New York not to be exempt. *Ford* v. *Johnson*, 34 Barb. 364.

All the members of the court concur in the above conclusion, but a portion of the court do not wish to be

bound if a case should arise in which a threshing machine was claimed by a farmer who owned and needed it for actual use, and did not keep and own it for the purpose of gain.

III. Plaintiff claims, that the property left with her conformably to section 2361 of the Revision, is not sub-

<span style="float:left">5. EXECUTOR: property set apart to the widow.</span> ject to distribution, but is hers, or, at least, that she has the right to dispose of it and use the proceeds for her support and that of the family.

This section has several times been under consideration in this court. *Wilmington* v. *Sutton*, 6 Iowa, 44; Id. 137; *Gaskell* v. *Case*, 18 Id. 147; *Paup* v. *Sylvester*, 22 Id. 371. It affords another illustration of the obscurity of the law regulating the disposition of decedents' property. The cases above referred to settle, that property left with the widow is not hers in her own right to dispose of as she pleases.

It is to *remain* with her. She may use and enjoy it. We would not say that she might not dispose of fattened hogs, or otherwise prevent waste.

So far as she claims that the articles set apart to her under section 2361 are absolutely hers, or that she has the absolute right to sell and receive the proceeds for her own use, we are of opinion that the District Court properly decided against her.

How long the property shall *remain* with the widowed head of the family; whether if she remains and is such head of a family, she can insist upon the retention of the property beyond the time when the general personal property of the deceased is distributed under section 2422 of the Revision, is a question which upon the record does not require a decision. See *Paup* v. *Sylvester, supra.*

Affirmed.