In the Matter of the Estate of FRANK R. CROCKER, Deceased, T. M. STUART, JR., Administrator of Said Estate, J. H. JAMISON, Receiver of the First National Bank of Chariton and other Creditors of said Bank, v. MINNIE E. CROCKER, Widow of FRANK R. CROCKER, and the Children of said FRANK R. CROCKER, Deceased, Appellants.

Homesteads: CONVEYANCE BY INSOLVENT OWNER: RIGHTS OF CREDITORS.
1 The homestead is not subject to the payment of debts of the owner, and he may dispose of it as he sees fit even though insolvent and done in contemplation of suicide; so that a conveyance of the homestead by the owner to his wife to enable her to secure her distributive share of his estate from other lands of which he might die seised, is not a matter of which his creditors can complain.

Same: DELIVERY OF DEED. The execution of a deed by the owner conveying the homestead to his wife, done in contemplation of suicide and delivered to a third person with instructions to deliver the same to his wife, will, upon delivery after his death according to instruction, constitute a sufficient delivery of the instrument.

Homestead rights of widow: ELECTION: INCONSISTENT DEFENSES.
3 In this action brought in the interest of the creditors of an insolvent estate, the widow did not originally make any claim to the homestead, but contended that she was not bound to take her distributive share so as to include the dwelling house used as a homestead, but subsequently claimed the homestead under a deed from her husband, of which she had no knowledge at the time of her original pleading.
Held, that she was entitled to resist the claim of the creditors by pleading title to the homestead under the deed, and also to insist upon her right to take a distributive share in the estate not including the homestead, under the statute authorizing inconsistent defenses.

Same: CONVEYANCE OF HOMESTEAD: VALIDITY. The fact that a deed
4 conveying the homestead also includes other property, a con-

veyance of which is in fraud of creditors, will not affect the validity of the instrument as a conveyance of the homestead.

**Same:** DISTRIBUTIVE SHARE OF WIDOW: WHAT INCLUDED: STATUTES.
5 Under the present statutes the share of the widow of an insolvent must be so set off to her that it will include the dwelling house given by law to the homestead.

*Appeal from Lucas District Court.*—HON. S. W. EICHELBERGER, Judge.

THURSDAY, JUNE 16, 1910.

THE opinion states the case. *Affirmed* on first appeal and *reversed* on second appeal.

*G. G. Fancher* and *T. M. Stuart,* for appellants.

*T. M. Stuart, Jr.,* and *O. A. & L. B. Bartholomew,* for appellees.

SHERWIN, J.—In November, 1908, T. M. Stuart, Jr., administrator of the estate of Frank R. Crocker, deceased, filed in the district court a petition in which it was alleged that the estate of Frank R. Crocker was insolvent; that claims amounting to the sum of $809,323 had been filed and allowed and that there were still other claims against said estate aggregating the sum of $350,000. The petition alleged the death of Crocker on the 31st day of October, 1907, and that he died seised of certain real estate; that Mrs. Minnie E. Crocker, his widow, became the absolute owner of the undivided one-third interest therein by operation of law, and the children of the deceased above named became by operation of law the owners of the remaining undivided two-thirds interest in said real estate, subject only to the rights of the creditors of the deceased. The petition thus filed was an application for authority to sell real estate for the payment

of the debts of the estate. Following the filing of the administrator's petition Minnie E. Crocker filed in said court her election to take her distributive share of the real estate belonging to the estate of her husband in the language following:

Now, therefore, this certifies that the said Minnie E. Crocker, wife of said Frank R. Crocker, hereby elects to claim, take and receive the one-third interest or share in all the real estate of which deceased died seised, including the one-third interest or share in said homestead property. She claims that said homestead property is exempt from the payment of any and all debts against said estate, and in view of her election to take the one-third interest or share therein, the remaining two-thirds interest or share therein will pass to the five children of the deceased. That, as the creditors of said estate are not interested in said homestead property, there is no necessity of partitioning or dividing the same between her and said children at this time; and as it would be very difficult if not impossible to sell said property at this time for its full value, she does not desire that any order be made in relation thereto, but desires to preserve and protect her one-third share therein, and for this purpose files herein this statement of her election.

In a cross-bill Mrs. Crocker asked that her interest in all the lands of which her husband died seised be established, and that a partition of said lands be made by a sale thereof, but she therein made no claim to the homestead, nor did she mention it. The children of Mrs. Crocker, some of whom were adults, were made parties defendant by the plaintiffs herein. They all answered independently of the answer and cross-bill of their mother, alleging that, because of their mother's election to take her one-third distributive share of all of the real estate, the other two-thirds interest or share in the homestead property passed to them under the law, exempt from the debts of the father. On the trial Mrs. Crocker claimed

that she was not obliged to take her distributive share of the estate so that it would include the homestead, but the trial court found against such contention and ordered her share set off to her so that it would include the dwelling house given by law to the homestead. From such order she appealed.

After the decree above referred to had been entered and an appeal taken therefrom, Mrs. Crocker filed in the original action a petition denominated a second or amended petition, in which she alleged that:

Said Frank R. Crocker, deceased, on or about the 29th day of October, 1907, with the intent and expectation of committing suicide, executed to his wife Minnie E. Crocker, a deed to his homestead property . . . that immediately after the execution of said deed said Frank R. Crocker placed the same in an envelope and delivered the same to one Emma Powell, with directions to deliver the same to his wife, the said Minnie E. Crocker; that at that time the said Minnie E. Crocker was absent from home and in the state of Illinois, and that said Frank R. Crocker did not expect that she would return home for a few days; that knowing, that his wife was absent from the state of Iowa, and that she would not return for a few days and until after the 31st day of October, 1907, he did not expect or intend that said deed would be delivered to her during his lifetime, but he did expect and intend that said deed would be delivered to her after his death.

It was further alleged that at that time the said Frank R. Crocker was:

The cashier of the First National Bank of Chariton, Iowa, and said bank had, through his mismanagement, become hopelessly insolvent, and he was expecting that a government examiner of banks would appear in Chariton on the 31st day of October, 1907, to examine said bank, and knowing that the said bank was bankrupt, he expected that said condition of said bank would become known on the 31st day of October, 1907; that in view of this fact

he determined to convey his said homestead property
. . . to his wife, and commit suicide on the night fol-
lowing the 30th day of October, 1907, which he did.

That the envelope containing said deed was delivered
to Minnie E. Crocker by said Emma Powell on the 2d
day of November, 1907; that thereafter said papers with
others were delivered to Guilford Crocker, a son of the
deceased, who was soon afterwards appointed administrator
of deceased. It was still further alleged that Mrs. Crocker
paid no attention to the papers or property of her deceased
husband, leaving all of her business connected therewith in
the hands of her son, Guilford Crocker, and her attorney,
T. M. Stuart; that the said Stuart had no knowledge of
the existence of said deed until after the former decree
was entered in the case; that he was at one time advised
by Guilford Crocker that he had found among the papers
of his father delivered to him by said Emma Powell a
deed conveying to his mother a parcel of real estate adjoin-
ing the homestead property, but that said Stuart, laboring
under the impression that said deed simply included the
Pepper property, informed said Guilford Crocker that he
thought it void because of the insolvency of his father
when it was made. The prayer of the amended petition
was that the former decree be so changed as to establish
her individual ownership of the homestead property under
said deed, and also to establish her right to a one-third
interest in all of the other real estate belonging to said
estate. The administrator, Stuart, and Jamison, the
receiver of the bank, demurred to the petition as amended
on the following grounds, among others:

(2) Said petition shows that the widow elected to
take her distributive share, and that the matter as to
whether or not such distributive share should include the
homestead in question, has been fully adjudicated; (3)
that said petition shows that said widow and children
claimed in a former proceeding in this court that when

the widow elected to take her one-third distributive share in real estate in lieu of her homestead rights, that said homestead property descended to the widow and children exempt from debts and the widow having elected to claim the one-third interest in said property, the remaining two-thirds passed to the children and that said matters were fully adjudicated in said proceeding, and the said widow and children having elected to pursue such course therein, are now precluded from opening up said case and litigating such subject matter upon a basis . . . contrary to that relied upon by them in the first proceeding and are estopped from claiming title at this time under the purport of the deed set out in said petition.

That the petition shows that Crocker was insolvent at the time the deed to his wife was made, and that said deed was made with the intention and expectation of committing suicide, and was without consideration, and included the homestead with other property, and the said deed was therefore fraudulent and void; that the deed was void under the circumstances of its execution because the law provides that the distributive share shall be so set off as to include the dwelling house given by law to the homestead, and such conveyance would prejudice the rights of the creditors of the estate; that said petition shows that there was no legal delivery of the deed; that the facts pleaded did not entitle the plaintiff to relief. The demurrer was sustained generally, and the widow and children electing to stand upon their petition judgment was entered dismissing the same, and they appeal. The appeals were submitted together.

Frank R. Crocker had the absolute right to deed the homestead to his wife, no matter what his indebtedness or motive. No creditors had a lien thereon,

1. HOMESTEADS: conveyance by insolvent owner: rights of creditors.

and it not being subject to the payment of his debts, he might sell it or give it away if he wanted to, and no creditor can complain of such action. *Dettmer v. Behrens,* 106 Iowa, 585, and

cases cited therein. Nor can it make any difference that he deeded it to his wife in contemplation of suicide, and for the purpose of enabling her to take her distributive share of his estate from other lands of which he might die seised. Had he seen fit to do so, he might have conveyed the homestead to a stranger without consideration, and, so far as his creditors are concerned, no question could be made as to the validity of such conveyance. And such a conveyance could not possibly affect or diminish the distributive share of the widow in his other lands. Creditors became such with knowledge of the homestead rights and of the right of a widow to a distributive share in the estate of her husband, hence a conveyance of property upon which they have no lien and which they can not subject to the payment of their claims against the debtor is not prejudicial to them, and they can not complain thereof. *Richards v. Orr,* 118 Iowa, 724.

There can be no serious question as to the sufficiency of the delivery of the deed in question if the averments of the pleadings are true, and for the purposes of this

2. Same: delivery of deed.

case they must be so considered. If Crocker made the deed after he had fully made up his mind to kill himself before the return of his wife, and gave the deed to Miss Powell with directions that it be given to Mrs. Crocker upon her return home, such acts would constitute a good delivery. *Foreman v. Archer,* 130 Iowa, 49, and cases cited therein.

The appellees do not claim that Mrs. Crocker had knowledge of the deed of the homestead to her before the original decree was entered. In their brief and argument

3. Homestead rights of widow: election: inconsistent defenses.

they say that the "only question in this second appeal is as to the validity of the deed in question." But they do insist that, if it be conceded that the conveyance of the homestead was valid, and that a sufficient excuse has been made for not claiming the homestead thereun-

der before the decree was entered originally, the position of the appellants in now prosecuting the appeal from the first decree amounts to an election of remedies, and that they should not be heard on the second appeal.

This case does not, however, fall within the general rule relating to the election of remedies or estoppel. Here, the original suit was brought in the interests of the creditors alone, and Mrs. Crocker and her children were made defendants. In neither her answer nor her cross-bill did Mrs. Crocker make any claim to the homestead as a part of her distributive share under the statute. Nor did she make any other claim to it. Under the law she was entitled to her distributive share in all of the realty, and there was no possible way under the statute whereby she could avoid taking such share so as to include at least one-third of the value of the homestead. Mrs. Crocker's position at all times was that she was not bound to take her share so that it would include the dwelling house used as a homestead. She never has in our judgment elected to pursue any remedy. She has at all times been a defendant except as she in her cross-bill alleged her interest in the land substantially as it had been declared by the plaintiffs. Instead of claiming the homestead in the original proceedings, she was trying to escape having it set apart to her, and in now claiming to own it by virtue of a conveyance, she is not pursuing an inconsistent remedy. The most that may be said is that she has discovered an additional reason why she should not be compelled to take her distributive share so as to include the homestead, and in doing this she is doing no more than the law authorizes her to do. The children were claiming an interest in the homestead, it is true, but this they had a perfect right to do, and Mrs. Crocker's rights can not be affected by their action. Code, section 3620, provides that inconsistent defenses may be pleaded, and we are of the opinion that under that statute Mrs. Crocker would have the right to resist the claim of

the creditors by pleading absolute title to the homestead in herself, and also her right to take her distributive share so as not to include the homestead.

It is also said that, because the deed in question conveyed other property to Mrs. Crocker, it is invalid as to the homestead property. We are cited to no authority so holding, however, and we do not know of any reason for such a rule.

4. SAME: conveyance of homestead: validity.

On the first appeal but one question is involved, and that is whether the creditors can compel the widow to take her distributive share so that it shall include the dwelling house given by law to the homestead. The determination of this question requires us to construe a statute, Code, section 3367, which was enacted with the adoption of the present Code in 1907. It is as follows: "The distributive share of the survivor shall be set off so as to include the ordinary dwelling house given by law to the homestead, or so much thereof as will be equal to the share allotted to her by the last section, unless she prefers a different arrangement; but no such arrangement shall be permitted unless there be sufficient property remaining to pay the debts of the decedents." This section is the same as section 2441 of the Code of 1873, with this exception: The last clause of section 2441 provided that "no different arrangement shall be permitted where it would have the effect of prejudicing the rights of creditors;" while the last clause of section 3367 provides that "no such arrangement shall be permitted unless there be sufficient property remaining to pay the debts of the decedents." Under the law as it stood before the enactment of section 3367, it was held that the creditors could not compel the widow or survivor to so take her distributive share as to include the dwelling house. *In re Estate of Coulson,* 95 Iowa, 696. See, also, *Kite v. Kite,* 79 Iowa, 491.

5. SAME: distributive share of widow: what included: statutes.

In the *Coulson* case it was also held, following our

previous decisions, that, when the survivor terminates his right to the homestead by abandonment, the homestead character is not terminated, but the homestead descends to the children free from the debts of the deceased owner. *Johnson v. Gaylord,* 41 Iowa, 362. In the *Coulson* case it was also said, "The decisions to which we have referred authorize the conclusion that the surviving husband or wife may elect to take a distributive share of the real estate of the deceased spouse, which shall not include the homestead which was owned by the decedent; that creditors can not prevent such apportionment; and that when it is made the homestead will descend to the issue of the decedent, and retain its exempt character in their hands." The cases holding that the homestead descended to the heirs of the decedent when abandoned by the survivor were bottomed on the fact that the homestead right was only a possessory one. *Butterfield v. Wicks,* 44 Iowa, 310. But the distributive share of the survivor is entirely separate and distinct from the homestead right, and the survivor can not have both. *Meyer v. Meyer,* 23 Iowa, 359; *Butterfield v. Wicks, supra.* Where the distributive share is set apart to the survivor, it vests absolute title in him. And, when there is an election to take the distributive share, it amounts to an abandonment of homestead rights. *In re Coulson, supra; Butterfield v. Wicks, supra.*

The Legislature has the undoubted power to fix the homestead rights and to say what the distributive share of the surviving spouse shall be and from what lands or property it shall be set apart. If, therefore, section 3367 requires such share to be so set off as to include the dwelling house given by law to the homestead the election of the survivor to take his distributive share and a decree in conformity therewith would vest the survivor with a fee title to the homestead, and the heirs would have no right therein.

VOL. 148 IA.—8.

*In re Estate of Coulson* was decided in October, 1895, by a majority opinion of the court. In the dissenting opinion of Judge Granger, he said, speaking of the majority opinion: "The proposition as stated is: When the owner of a homestead and of other real estate dies intestate, leaving a surviving husband or wife, and issue, and the survivor abandons the homestead, and elects to take of the real estate the distributive share, as provided by law, may that share be so taken as not to include the homestead, and the homestead be permitted to descend to the issue of the deceased spouse free from all liability for the debts of the decedents?" As thus stated that case presented the precise question before us in the instant case. The majority opinion therein was based on the construction that had previously been given section 2441 of the Code of 1873, in connection with the other homestead statutes. These decisions were based on the reasoning that the creditors could not be prejudiced by permitting the survivor to take his distributive share without including the homestead, because the creditors had no right to the homestead in the first instance. Section 3367 in positive and unmistakable language says that the dwelling house shall be included in the share so set off, unless there be sufficient property remaining to pay the debts of the decedents.

We do not see how the intent of the lawmakers could have been made clearer, and it is equally as clear to us that the particular language was not used without a purpose. In the report of the Code Commissioners no change in the old section was made; the change was made by the Legislature, which is significant. On the proposition involved in this branch of the case the trial court was clearly right, and its judgment will therefore be affirmed.

While one ground of the demurrer to the second petition was that there was an adjudication in the first trial,

the question is not argued by the appellees, and hence we do not determine it.

On the first appeal the judgment is affirmed, and on the second appeal the judgment is reversed.

*Affirmed* on first appeal, and *reversed* on second appeal.