GUSTINE AMISH, Appellant, v. REYNOLDS AMISH et al., Appellees.

**DESCENT AND DISTRIBUTION:** Election to Take Homestead—Occupancy—Estoppel. A wife may not maintain, after the death of the husband, an action to set aside a deed to nonhomestead realty,

in which she had joined in order to convey her inchoate interest, when, with full knowledge of the infirmities of the deed, she voluntarily elected, upon the death of the husband, to occupy the homestead for life, in lieu of her distributive share.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

OCTOBER 23, 1923.

SUIT in equity, to set aside deed to land. Petition dismissed. Plaintiff appeals.—*Affirmed.*

*Remley & Russell* and *Hart & Hart,* for appellant.

*Dutcher & McClain,* for appellees.

WEAVER, J.—Plaintiff married Adam Amish in the year 1874. Adam was a widower, with eight children, and, as fruits of his marriage with plaintiff, became father of an additional brood of fifteen. He died in November, 1915. During the period covered by their married life, Adam bought and sold different items of property, his wife joining him in the execution of various written instruments relating thereto. In November, 1892, Adam and his wife made a warranty deed to 80 acres of the land on which they lived, to Reynolds Amish, a son of Adam's first marriage, subject to a life estate reserved in Adam. In the same deed was included a small timber tract. It is the theory of defendants that this deed was returned to Adam for the correction of the description of the timber tract, and that a new deed was made and delivered on February 21, 1893. Possession of the land was then given up to Reynolds Amish, who, with his grantees, has ever since maintained it and exercised the usual acts of ownership over it. The plaintiff contends, however, that the only deed she signed is the one made in November; that she joined therein under compulsion and coercion, and in ignorance of its real nature; that she did not join in the deed of February, 1893, and that her alleged signature to such deed is a forgery, or, as she sometimes seems to say, that the deed in evidence of the later date is the original paper, on which the written date has been fraudulently altered. If there were, in

fact, two deeds, the original does not appear to have been put in evidence, nor is its absence accounted for. Plaintiff alleges, in substance, that her married life was one of slavish subjection to the will of a tyrannical husband; that the deed signed by her was negotiated and prepared without her consent; and that Adam, taking advantage of his influence and control over her, and of her weak and helpless condition, and with the purpose of depriving her of any part or share in his estate, took her to the office of a conveyancer, and there, by threats, commands, and other coercive influences, compelled her to sign a paper, of the real nature of which she was ignorant. She further alleges that the fact that the paper signed by her was a deed, was first brought to her knowledge by her husband "about two years before his death." The date of his death is variously given as November 17, 1915, and November, 1916; and this suit was begun June 11, 1918, nearly 2 years after Adam's death, 7 years and more after plaintiff admits notice of the real character of the writing, and more than 25 years after the date of the alleged wrong. To justify the setting aside of a deed of land, especially where the conveyance is followed by surrender of possession for a quarter of a century, under a claim of right, the attack upon its validity must be supported by clear and convincing evidence. Practically speaking, the claim of the plaintiff for the relief sought rests solely upon her own testimony. True, several of her children testify to cruel and oppressive conduct by their father in his treatment of their mother, but their stories, if true, necessarily relate to a period after the deed in question was made. Adam and plaintiff were married in 1874, and the deed, if made at all, must have been made not more than nine years later,—which was before some of these children were born, and when none could have been more than eight years old. Granting the entire truth of their evidence, it still affords no direct corroboration of plaintiff's charge that she executed the paper under coercion. Her own testimony and her admitted conduct are marked with many inconsistencies. For example, there is evidence that, in 1904, Adam desired to sell and convey another tract of land, and plaintiff refused to join in the conveyance, except upon condition that she be given one third of the price received for it. The condition was granted, and she received

therefrom in her own right $2,032, and signed an agreement that she would not claim any distributive share in the other two thirds received by Adam. It seems somewhat improbable that this woman, who could thus assert and safeguard her rights in one tract of land against the domineering influence of a brutal husband, would be driven by fear of him to blind surrender of another tract.

Again, when Adam died, he was seized of the title of a homestead property in Iowa City. He left a will, in which he made no provision for his wife, saying that she had already received more than her one third of his estate. Plaintiff appeared in the probate proceedings, and while protesting that the will was invalid, filed her written election to take the homestead for life. This election was made after death had relieved her of any fear of or subjection to her husband, and with knowledge already acquired of the nature of the deed which had been made to the son Reynolds. In the writing then executed, she expressly recognizes the fact that, by her husband's will, she would receive no part of his estate, and that, notwithstanding such will, she "was entitled to one third of all the property he had at the time of his death," and then adds "that, in lieu of said one-third interest, this applicant, being the widow of the said Adam Amish, elects to take and occupy the homestead for her life, with the right to use and occupy the same and to have absolute possession thereof during her life." It is the argument of appellee that by this election plaintiff is now estopped to assert or enforce any claim for any part or interest in the land in controversy, as surviving wife of Adam. It is difficult to avoid the force of this objection. By the terms of the statute, Code Section 2985, the widow may elect to retain the homestead for life, in lieu of her statutory share in the real estate of the deceased. She may not so elect and at the same time, *in addition* thereto, retain her statutory share in other lands. See *Meyer v. Meyer*, 23 Iowa 359; *Butterfield v. Wicks*, 44 Iowa 310; *Jamison v. Crocker*, 148 Iowa 104, 113. If the deed in question here was void, as appellant says, then, so far as it affected the right of plaintiff to share in this land, she could rightfully have refused to recognize it, and have demanded her statutory share as widow. As to her, it was as if such deed had never been made, and her right to de-

mand a dower right in the property was as perfect then as it was when she later brought this suit. It would seem to follow inevitably that, in electing to take a homestead right, she estopped herself from asserting any further claim of right or title to any part of the estate left by her husband. She had her choice to take her homestead right *or* to insist upon her statutory right of dower, and voluntarily elected to take the former. We reach this conclusion the more readily because of the weakness of her showing in support of her claim that the deed in question is a forgery. It is quite impossible to reconcile all her testimony to this effect with other admitted or well established facts.

In support of this claim, she says and repeats that her signature to the paper is not genuine because the name "Amish," as there found, is written with a "long A," whereas she always wrote her name with a "round A." Being asked to furnish samples of her genuine signature, she wrote it on several slips of paper, and in each instance with a "round A;" but there were put in evidence two original deeds and a lease and a contract in which she had joined with her husband, and in three of these papers she had used the "long A," thus evidencing, to say the least, a marked failure of memory.

Further reference to the sufficiency of the evidence is not called for. It is putting the case very mildly to say that it falls far short of that reasonable certainty which is properly required to invalidate a deed of land which has been followed by the unbroken and unchallenged possession of the grantee for many years, and when the mouth of the grantor charged with gross fraud has been closed by death.

The decree of the court below denying the relief sought by plaintiff is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.